FRANK KRASNER ENTERPRISES, LTD. d/b/a Silverado Promotions and Silverado Gun Show, et al., Plaintiffs,

v.

MONTGOMERY COUNTY, MARYLAND, Defendant.

No. Civ.A. MJG–01–1831.

United States District Court, D. Maryland.

Oct. 4, 2001.

Jonathan P. Kagen, Alexander J. May, Brassel and Baldwin, Annapolis, MD, for Frank Krasner Enterprises Ltd.

Judson P. Garrett, Jr., McGuire, Booth, et al., Baltimore, MD, Clifford L. Royalty, Office of the County Attorney, Marc Pemble Hansen, Office of the County Attorney, Rockville, MD, for Montgomery, Maryland.

Randolph D. Moss, Wilmer Cutler and Pickering, Washington, DC, for The Violence Policy Center.

David W. Fischer, Law Office, Glen Burnie, MD, Mark Barnes, Mark Barnes and Associates, Washington, DC, for The National Association of Arm Shows.

Joseph Curran, Jr., Atty. Gen. of Md., Robert A. Zarnoch, Katherine M. Rowe, Asst. Attys. Gen., Annapolis, MD, amici curiae for State of Md.

Randolph D. Moss, Stuart F. Delery, David S. Molot, Laura E. Fein, Rachael A. Hill, Wilmer, Cutler & Pickering, Washington, DC, for Violence Policy Center and Marylanders Against Handgun Abuse, Inc.

## MEMORANDUM OF DECISION

GARBIS, District Judge.

This case was tried before the Court without a jury. The Court has heard the evidence, reviewed the exhibits, considered the materials submitted by the parties and the amici curiae and had the benefit of the arguments of counsel. The Court now issues this Memorandum of Decision as its findings of fact and conclusions of law in compliance with Rule 52(a) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

For some ten years or more, Plaintiff, Frank Krasner and his company, Frank Krasner Enterprises, Ltd., d/b/a Silverado Promotions and Silverado Gun Show ("Krasner") have presented gun shows in various locations in Maryland. Krasner's gun shows consisted of one or more indoor open spaces with from about 110 to 400 tables rented by exhibitors. The exhibitions include vendors selling guns of various (legal) types [1], vendors selling gun-related merchandise, organizations involved in gun-related activities, etc. Krasner derives income from the rental of table space by vendors and admission fees.

Krasner's shows have been run in a highly competent manner with adequate security. There has not been any arrest, incident of violence, or security problem in regard to the running of Krasner's gun shows. Krasner is unaware of any violation of law relating to firearms at one of his gun shows and there has been no evidence that there have been any such violations. While certain facilities choose not to permit gun shows as a matter of principle, there is nothing to indicate that Krasner was ever denied use of a facility because of the manner in which Krasner's gun shows were conducted.

For more than ten years, Sanford Abrams, and his father before him, owned and operated RSM, Inc., d/b/a Valley Gun and Police Supply ("RSM"), a licensed firearm dealer in Maryland. RSM has been a regular exhibitor at Krasner's gun shows in Maryland. RSM takes firearms to the gun show for display and for sale in compliance with pertinent state and federal laws.

---

**1.** The term "gun show" is generally understood by gun aficionados to describe a gathering at which firearms are displayed and sold as distinct from an "exhibition" at which the weapons are displayed but not sold.

Montgomery Citizens for a Safe Maryland ("MCSM") is a group of citizens interested in gun matters. The group espouses political views in favor of gun ownership and seeks to persuade like-minded citizens to exercise political rights to promote gun owners' rights. MCSM has been a regular exhibitor at Krasner's gun shows using table space donated by Krasner. MCSM distributes written materials relating to gun safety as well as its political viewpoint. Moreover, MCSM members staff the table and engage in largely gun-related discourse with gun show attendees.

In the Spring of this year, 2001, Krasner was planning to present his two annual gun shows at the Montgomery County Fairgrounds Agricultural Center ("Ag Center")[2] in October of 2001 and January of 2002. RSM and MCSM planned to participate in the Ag Center gun shows as they had in the past. In May of 2001, Defendant Montgomery County modified § 57 of the County Code in a manner which, as discussed herein, effectively prevented the Ag Center from permitting a show on its premises at which guns were displayed and sold. Krasner, taking the well-justified position that the display and sale of guns was an essential element of a gun show, filed the instant lawsuit to enjoin enforcement of the aforesaid County Code provision in regard to the Ag Center. RSM and MCSM joined as Plaintiffs.

Inasmuch as the pertinent amendment was effective December 1, 2001, the matter was moot with regard to the October of 2001 gun show. To avoid any misunderstanding, the Court (without objection by the County) granted a Preliminary Injunction prohibiting the enforcement of the Amendment to County Code Section 57–13 to the October of 2001 Krasner gun show. The Court declined to issue a Preliminary Injunction as to the January of 2002 Krasner gun show; however this case was set for trial on an expedited basis.

## II. DISCUSSION

### A. The Statutory Framework

Montgomery County Code § 57–13, as amended in May of 2001, provides:

(a) The County must not give financial or in-kind support to any organization that allows the display and sale of guns at a facility owned or controlled by the organization. Financial or in-kind support means any thing of value that is not generally available to similar organizations in the County, such as grant, special tax treatment, bond authority, free or discounted services, or a capital improvement constructed by the County.

(b) An organization referred to in subsection (a) that receives direct financial support from the County after December 1, 2001 must repay the support if the organization allows the display and sale of guns at the organization's facility after December 1, 2001 after receiving the County support. The repayment must include the actual, original value of the support, plus reasonable interest calculated by a method specified by the Director of Finance.

Mont.Co.Code § 57–13.

The *"Tillie Frank"* law[3] provides, in pertinent part:

---

**2.** It appears that the Ag Center is the only location in Maryland that is both suitable for, and would allow on the premises, a gun show of the type presented by Krasner.

**3.** Named after the case of *Mayor and Council of Forest Heights v. Tillie Frank*, 291 Md. 331,

435 A.2d 425 (1981) in which the Court of Appeals held that a County licensing ordinance preempted two municipalities' prohibitory ordinances. The Maryland legislature enacted the *Tillie Frank* law to "reverse" the

(a) County legislation made inapplicable in municipality—Except as provided in subsection (b), legislation enacted by a county does not apply in a municipality located in such county if the legislation:

(3) Relates to a subject with respect to which the municipality has a grant of legislative authority provided either by public general law or its charter and the municipality, by ordinance or charter amendment having prospective or retrospective applicability, or both:

(ii) Generally exempts itself from all county legislation covered by such grants of authority to the municipality.

Md.Code, Art. 23A § 2B(a).

Under Maryland law, the City of Gaithersburg, as a municipal corporation, has a specific grant of legislative authority to "regulate the purchase, sale, transfer, ownership, possession, and transportation of ... weapons and ammunition." Md.Code, Art. 27 § 36H(b). Furthermore, Gaithersburg, by ordinance, has exercised its Tillie Frank authority to generally exempt itself from such county legislation.[4] Gaith. City Code § 2–6. Therefore, under Maryland law, Montgomery County has no power to regulate the sale of firearms within the City of Gaithersburg.

The Ag Center is within the City of Gaithersburg. Thus, Montgomery County has no power to regulate the sale of firearms at the Ag Center.

Plaintiffs contend that the § 57–13 (as presently amended)[5] is invalid under State law because it constitutes an attempt to regulate the sale of guns within the City of Gaithersburg, the location of the Ag Center. Plaintiffs further contend that even if amended § 57–13 were valid under State law, the enforcement to prohibit Krasner's gun show at the Ag Center would violate their respective free speech rights under the First Amendment of the United States Constitution and the Maryland Declaration of Rights.

The County contends that § 57–13 is an exercise of its spending discretion and, as such, not subject to the limitations imposed by the *Tillie Frank* law. The County further contends that the application of § 57–13 in regard to Krasner's gun show at the Ag Center would violate no cognizable rights of any of the Plaintiffs.

B. *The Nature of § 57–13—A Spending or Regulatory Measure?*

■ As discussed herein, the Court concludes that § 57–13 is a gun sale regulation enacted by Montgomery County in the guise of a discretionary spending provision.

The Code section provides for a severe sanction for an entity permitting the display and sale of firearms at a facility. Under § 57–13, an organization may receive nothing of value from the County not generally available to similar organizations and will have to repay the value of "any thing of value" received from the County on/or after December 1, 2001[6]. The

---

Court's decision and restore traditional "home rule" principles.

4. "It is hereby ordained by the ... City of Gaithersburg, Maryland, that pursuant to the authority granted by Article 23A, section 2B(a) of the Annotated Code of Maryland ... the City of Gaithersburg, Maryland is hereby declared exempt from any and all legislation and regulations ... enacted by Montgomery County ..." Gaith. City Code § 2–6.

5. Plaintiffs had made similar claims as to Montgomery County Code Section 57–1 and 57–11. The County acknowledges that §§ 57–1 and 57–11 are gun sale regulation provisions that cannot be applied within the City of Gaithersburg by virtue of the *Tillie Frank* law.

6. County's counsel stated at the hearing that the County considered expenditures committed prior to December 1, 2001 but paid thereafter to be exempt from the provision.

"things of value" referred to in the statute include, but are not limited to, grants, special tax benefits, bond authority, free or discounted services and even capital improvements. Moreover, the "things of value" need have no relationship whatsoever to any display and sale of guns or even to the facility in which a display and sale of guns was permitted. Indeed, an organization of any kind receiving "any thing of value" from the County would be subject to the restrictions of § 57–13 if it owned or controlled a facility anywhere at all in which there was a display and sale of guns.

■ The Court finds persuasive the Plaintiffs' argument that to constitute a valid exercise of spending discretion, the spending being controlled must have a direct relationship to the purpose of the legislation. The Court finds instructive analogous federal cases in which it was necessary to distinguish between the exercise of spending discretion and the exercise of regulatory authority.

As stated sixty-five years ago by Justice Roberts:

"There is an obvious difference between a statute stating the conditions upon which moneys shall be expended and one effective only upon assumption of a contractual obligation to submit to a regulation which otherwise could not be enforced."

*United States v. Butler*, 297 U.S. 1, 73, 56 S.Ct. 312, 80 L.Ed. 477 (1936).

In *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), the Supreme Court held that regulations promulgated under Title IX (which conditions nondiscrimination to the receipt of federal funds) were subject to program-specific limitations. Only a program which directly benefitted from the federal funds administered under Title IX was subject to its regulations prohibiting discrimination. Therefore, an entire college did not become subject to the anti-discrimination regulations simply because one program received federal financial aid.

In *David K v. Lane*, 839 F.2d 1265 (7th Cir.1988), a case involving federal conditional funding to a prison, the court found that *Grove City* analysis applied to Title VI. The court held:

While it is possible that the federal funds received by [the prison] and earmarked for the forecasting models may directly benefit or relate to the implementation of gang regulations and protective custody procedures, plaintiffs presented no evidence of such a connection. In the absence of such evidence, the conclusion that funds earmarked for prisoner classification and population forecasting will indirectly benefit the entire [prison] system, may be reached only by "ignoring Title (VI's) program specific language."

*David K,* 839 F.2d 1265 at 1276.

The recent Fourth Circuit case of *James Island Public Service District v. City of Charleston*, 249 F.3d 323 (4th Cir.2001), sets out a four-part test to determine whether a law is a valid conditional spending measure:

Although broad, the congressional spending power has limits. Federal expenditures must (1) benefit the general welfare, and the conditions imposed on their receipt must be (2) unambiguous, (3) "reasonably related to the purpose of the expenditure," and (4) cannot violate "any independent constitutional prohibition."

*James Island,* 249 F.3d 323 at 326–27, *quoting New York v. United States*, 505 U.S. 144, 171–72, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992).

Although *James Island* dealt with federal funding of local fire protection services, its rationale is applicable in the instant case, with respect to County funding of

local exhibition centers. The third prong of the *James Island* analysis, the reasonableness of the relationship between the condition and the funding, is of particular significance in considering § 57–13. In the case at Bar there is no necessary nexus at all between the purpose of the County's expenditures and the condition (prohibition of display and sale of guns) sought to be imposed.

In *New York v. United States*, 505 U.S. 144, 172, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the case quoted in *James Island*, the Supreme Court held that the "conditions imposed [were] reasonably related to the purpose of the expenditure [since] both the conditions and the payments embod[ied] Congress' efforts to address the pressing problem of radioactive waste disposal."

Similarly, in *Rust v. Sullivan*, 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), a decision on which Defendant relies, the federal grants at issue were for the purpose of establishing "family planning" programs and therefore the condition regarding abortion was closely related to the overall purpose of the funding.

Further, in *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), the Supreme Court upheld as Constitutional a federal statute conditioning states' receipt of federal highway funds on adoption of a minimum drinking age of 21. Although this relationship may seem attenuated at first glance, the Court reasoned that a uniform drinking age across all states would reduce the incentives for young people to drive out of state (into a neighboring state with a lower drinking age) to drink, and thus reduce incidents of drunk driving back across state lines. The Court found that "the condition imposed by Congress is directly related to one of the main purposes for which highway funds are expended—safe interstate travel." *Id.* at 208, 107 S.Ct. 2793.

In sharp contrast, the condition imposed by § 57–13 requires no relationship between the County's spending being controlled and the organizations' permitting the display and sale of firearms anywhere and any time after December 1, 2001.

The County can find no solace in Title VI of the Civil Rights Act of 1964. This statute provides, in pertinent part:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

It is true that Title VI places a universal condition on all recipients of federal funds, irrespective of the purpose of the expenditure. However, Congress has the power, under the Fourteenth Amendment, to directly legislate against such discrimination. Therefore, Title VI does not need to be analyzed in terms of whether it is a spending measure or a regulation because the inquiry is irrelevant. Even if a regulation, it would be valid.

In sum, the Court holds § 57–13 to constitute an attempt to regulate the sale of firearms. By virtue of the *Tillie Frank* law and the Gaithersburg City Code § 2–6, County Code § 57–13 cannot be enforced with respect to the display and sale of guns in Gaithersburg. Therefore, the County cannot enforce § 57–13 with regard to gun shows held in the Ag Center located in the City of Gaithersburg.

## C. *Free Speech Rights*

The Court has held § 57–13 unenforceable against Krasner's gun show at the Ag Center under State law. Therefore, it need not reach, and will not address, the free speech issues raised by the Plaintiffs.

The Court will note, however, that the parties have raised serious questions, some of first impression.

Plaintiffs present such questions as the extent to which Krasner's gun show itself may be viewed as a Constitutionally protected effort to assemble people of similar viewpoints [7], the extent to which RMS is engaging in protectable speech in offering guns for sale, the point at which commercial speech becomes unprotected action in a sale context, the extent to which MCSM—unquestionably seeking to exercise core First Amendment rights—would have standing when, as here, the County has effectively blocked any gun show including the display and sale of guns in the County.

On the other hand, the County presents the serious question of the circumstances, if any, in which a regulation in the form of a spending condition barring specified activities would violate First Amendment rights. *Compare Rust v. Sullivan*, 500 U.S. 173, 111 S.Ct. 1759 (1993) (bar of advising about abortion upheld) with *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001) (bar of certain types of legal challenges struck down).

### III. *CONCLUSION*

For the foregoing reasons:

1. The Court decides that Montgomery County Code § 57–13 may not be enforced against the Ag Center with regard to gun shows presented by Plaintiff Krasner.

2. A Preliminary Injunction shall be issued.

---

**7.** Compare *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S.

3. Judgment shall be entered by separate Order.

557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995).