**Gregory S. ROBERTS,**

v.

**PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, et al.**

**No. CIV.A.99–3836.**

United States District Court, E.D. Pennsylvania.

Feb. 21, 2002.

Sharon K. Wallis, Philadelphia, PA, for Plaintiff.

Howard G. Hopkirk, Office of Attorney General Bureau of Consumer Protection, Harrisburg, PA, Doris M. Leisch, Department of Public Welfare, Barry N. Kramer,

Lorrie McKinley, Philadelphia, PA, for Defendants.

LUDWIG, District Judge.

### MEMORANDUM

Defendant Pennsylvania Department of Public Welfare moves to dismiss this action under § 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(d).[1] Fed.R.Civ.P. 12(b)(6).[2] The motion, which is based on the Eleventh Amendment's guarantee of sovereign immunity,[3] will be denied.

Congress may abrogate Eleventh Amendment immunity of the States from suits for money damages by private individuals in federal court when "it both unequivocally intends to do so and 'act[s]

1. On August 6, 1999, plaintiff Gregory S. Roberts, a state juvenile care worker, filed a complaint *pro se*, alleging that, following a work-related injury, he was denied restricted duty status at his place of employment, Bensalem Youth Development Center, which is a state facility operated by DPW for court-ordered juveniles. At conference on July 18, 2000, plaintiff described the theory of his present claim as retaliation for having previously filed a disability claim. Tr. July 18, 2000 at 6–7. The action was regarded as a proceeding under the Americans with Disabilities Act, and was placed in suspense pending the decision in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (which held on February 21, 2001 that the Eleventh Amendment bars private suits for money damages against states in federal court under Title I of the ADA). However, before *Garrett* was decided, plaintiff wrote that he "did not file this case under ADA. I filed this case under Article Fourteen, equal protection of the law, and Rehabilitation Act[.]" Letter of February 13, 2001. Following *Garrett*, by order of March 12, 2001, the claim "under the ADA" was dismissed. On April 6, 2001, defendant BYDC moved to dismiss the Rehabilitation Act claim under Fed.R.Civ.P. 12(b)(6). On July 26, 2001, Sharon K. Wallis, Esquire, was appointed to represent plaintiff. On September 4, 2001, plaintiff responded to defendant's motion to dismiss by articulating a wrongful retaliation claim under both Title V of the ADA and the Rehabilitation Act. On September 10, 2001, plaintiff moved to amend the March 12, 2001 order so as to limit it to claims under Title I of the ADA. By order of October 4, 2001, plaintiff's motion was granted and plaintiff was given leave to file an amended complaint. On November 1, 2001, the first amended complaint was filed against DPW and against various individual defendants, alleging wrongful retaliation under both Title V of the ADA and the Rehabilitation Act. On November 19, 2001, DPW filed a renewed dismissal motion under Fed.R.Civ.P. 12(b)(6).

2. Under Rule 12(b)(6), the allegations of the complaint are accepted as true, and all reasonable inferences are drawn in the light most favorable to the plaintiff, and dismissal is appropriate only if it appears that plaintiff would prove no set of facts that would entitle him to relief. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir.2001).

3. The first amended complaint also alleges claims under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* Plaintiff, however, withdrew these claims, conceding that the PHRA claim against DPW is barred by the Eleventh Amendment. Plaintiff's Response at 2.

pursuant to a valid grant of constitutional authority.'" *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001) (quoting *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)). Here, as in *Garrett,* it is undisputed that the intentional abrogation requirement has been satisfied.[4] The "grant of constitutional authority" for the abrogation assertedly comes from Congress's power under § 5 of the Fourteenth Amendment[5] to enforce the right to petition guaranteed by the First Amendment, as applied to the States by § 1 of the Fourteenth Amendment.[6]

## I.  Factual Background

After a struggle with a BYDC resident on June 6, 1997, plaintiff was suspended without pay and, upon investigation, terminated, effective July 15, 1997. On November 11, 1997, following various grievance proceedings, plaintiff was reinstated, but his request for limited duty status was denied.[7] *See* Amended Complaint at ¶¶ 22–58. In November, 1997, he filed an internal grievance with BYDC's affirmative action officer, alleging that BYDC's disciplinary actions constituted disability discrimination growing out of his previous injuries. In January, 1998, he filed EEOC and PHRA charges of disability discrimination under Title I of the ADA against BYDC. *See* Amended Complaint at ¶¶ 59–62. The amended complaint also alleges that after plaintiff was injured by another resident on March 31, 1998, BYDC retaliated against him for his November, 1997 and January, 1998 complaints by arbitrarily terminating his disability benefits, denying limited duty, and excluding him from the premises. *See* Amended Complaint at ¶¶ 63–91.

## II.  First Amendment Right to Petition

The amended complaint adequately pleads a violation of plaintiff's First

---

4.  Section 12202 of the ADA: "A State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court and our Court of Appeals have recognized this to be an unequivocal expression of intent to abrogate sovereign immunity. *Garrett,* 531 U.S. at 363–64, 121 S.Ct at 962; *Lavia v. Pennsylvania, Department of Corrections,* 224 F.3d 190, 196 (2000). The Rehabilitation Act contains a parallel provision: "A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in federal court for a violation of Section 504 of the Rehabilitation Act of 1973 . . . ." 42 U.S.C. § 2000d–7(a)(1).

5.  Section 5 grants Congress "power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. As a separate matter, States may waive their sovereign immunity when they accept federal funds. *See South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). The parties dispute whether such a waiver took place here, but

that issue need not be decided given Congress's valid abrogation of immunity.

6.  The First Amendment: "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. Section 1 of the Fourteenth Amendment: "No state shall . . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person in its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

7.  According to plaintiff, his doctor reported that in the June 6 incident he had sustained "cervical sprain and strain and acute lumbo-sacral sprain and strain, prescribed a course of physical therapy and medication, and [initially] recommended that Plaintiff stay out of work." Amended Complaint at ¶ 50. The amended complaint also alleges that plaintiff's doctor released him to work in November, 1997, "subject to the restriction, [communicated to BYDC in writing,] that Plaintiff not be required to restrain students." Amended Complaint at ¶ 51, ¶ 58.

Amendment right to petition.[8] The First Amendment right to petition [9] protects the filing of EEOC and other administrative charges [10] and applies even though the issue does not refer to a matter of public concern; [11] it also prohibits various forms of retaliation.[12] Moreover, the same analysis pertains to the claims alleged under substantively identical retaliation provisions of the ADA and the Rehabilitation Act.[13] The November, 1997 and January, 1998 grievances and charges "opposed [some] act or practice made unlawful by" the ADA, regardless of post-*Garrett* enforceability questions. 42 U.S.C. § 12203.[14] Specifically, these charges opposed employment discrimination,[15] includ-

**8.** "To prevail on [a First Amendment] retaliation claim, [a plaintiff] would have to prove three things: first, that he engaged in protected activity; second, that the Government ... responded with retaliation; and third that his protected activity was the cause of the Government's retaliation." *Anderson*, 125 F.3d at 161.

**9.** *See McDonald v. Smith*, 472 U.S. 479, 482, 105 S.Ct. 2787, 2789, 86 L.Ed.2d 384 (1985) ("The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment....").

**10.** *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972) (extending the First Amendment right to petition to "the approach of citizens or groups of them to administrative agencies [and indeed] .... to all departments of Government.") (cited in *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir.1990)) ("first amendment rights of association encompass right of access to agencies and courts to be heard on applications for operating rights sought by competitors"); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir.1997) (holding that the filing of an EEOC charge "constituted protected activity under the First Amendment"); *San Filippo v. Bongiovanni*, 30 F.3d 424, 439 n. 18, 443 (3d Cir.1994) (holding that the right to file "non-sham" petitions using "formal mechanisms" like "[l]awsuits, grievances, workers compensation claims, etc." is protected by the First Amendment).

**11.** *See San Filippo*, 30 F.3d at 441–43.

**12.** *See Anderson*, 125 F.3d at 163 (listing kinds of retaliation found to be prohibited: employee dismissal, denial of residential site permit, failure to reappoint prisoners as inmate advisors, suspension of petroleum permits, filing of frivolous condemnation counterclaim, denial of firefighter's indemnification request, transfer of prisoner to another prison). However, only so-called "non-sham" petitions are entitled to First Amendment protection. *San Filippo*, 30 F.3d at 443. *See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983) (holding that a baseless retaliatory lawsuit could be enjoined as an unfair labor practice and noting that "baseless litigation is not immunized by the First Amendment right to petition"). Here, DPW does not raise a "non-sham" issue as to plaintiff's underlying grievances and charges.

**13.** Section 503 of the ADA: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203. The Rehabilitation Act: "The standards used to determine whether this section has been violated ... shall be the standard applied under Title I of the [ADA] and the provisions of sections 501 through 504, and 510, of the [ADA]." 29 U.S.C. § 704(d).

**14.** After *Garrett*, an act or practice can still be "made unlawful by" Title I of the ADA. *Garrett*: "Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief...." *Garrett*, 531 U.S. at 374 n. 9, 121 S.Ct. at 968 n. 9.

**15.** In filing the January, 1998 EEOC complaint under Title I of the ADA, plaintiff ap-

ing purported denial of reasonable requests for accommodation, "against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112.[16]

### III. Congressional Abrogation Power under § 5 of the Fourteenth Amendment

Given the pleading of facial violations of the retaliation provisions of the ADA and the Rehabilitation Act—as well as a First Amendment right to petition violation—the question becomes whether Congress thereby has the power to remedy such Constitutional violations. While Congress may secure Fourteenth Amendment rights by "prohibiting a somewhat broader swath of conduct ... [than is forbidden] by the Amendment's text,"[17] § 5 legislation "reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Garrett*, 531 U.S. at 365, 121 S.Ct. at 963 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997)). Plaintiff here, however, unlike *Garrett*, has pleaded a claim arising directly within § 1's "actual guarantees," so that a § 5 "congruence and proportionality" inquiry is not required.[18]

The Court so far has applied "congruence and proportionality" only to so-called "prophylactic" legislation that goes beyond § 1's guarantees.[19] Moreover, the original

---

pears to have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203. Whether he did so need not be decided, however, since he has already pleaded that, with his November, 1997 and January, 1998 complaints, he "opposed [an] act or practice made unlawful by" the ADA. *Id.*

16. Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A). A "'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. at § 12111(8).

17. *Garrett*, 531 U.S. at 365, 121 S.Ct. at 963 (quoting *Kimel*, 528 U.S. at 81, 120 S.Ct. at 644).

18. Alternatively, it could be said that the "congruence and proportionality" test is per force satisfied where § 5 legislation is confined to conduct illegal under § 1's "actual guarantees." The practical significance is the same: § 5 legislation enforcing § 1's "actual

guarantees" can be upheld without Congressional findings of "a history and pattern of unconstitutional [state action]." *Id.* at 964.

19. *See, e.g., Garrett*, 531 U.S. at 365, 121 S.Ct. at 963 (Title I of ADA); *United States v. Morrison*, 529 U.S. 598, 625–26, 120 S.Ct. 1740, 1758, 146 L.Ed.2d 658 (2000) (Section 13981 of the Violence Against Women Act of 1994, 42 U.S.C. § 13981); *Kimel*, 528 U.S. at 81, 120 S.Ct. at 644 (Section 623 of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623); *City of Boerne*, 521 U.S. at 519–20, 117 S.Ct. at 2163–64 (Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.*).

Similarly, Courts of Appeals reviewing the ADA under the Eleventh Amendment have, with mixed results, generally applied the congruence and proportionality test only to prophylactic sections. *See, e.g., Thompson v. Colorado*, 258 F.3d 1241, 1249, 1255 (10th Cir.2001) (holding that Title II of the ADA does not satisfy the test); *Shaboon v. Duncan*, 252 F.3d 722, 737 (5th Cir.2001) (citing *Coolbaugh v. State of Louisiana*, 136 F.3d 430, 438 (5th Cir.1998)) (holding that Title II of the ADA satisfies the test); *Lavia v. Pennsylvania, Department of Corrections*, 224 F.3d 190, 200, 206 (3d Cir.2000) (holding that Title I of the ADA does not satisfy the test). One case applies the congruence and proportionality analysis to a wrongful retaliation case under Title V of the ADA, holding that since "Congress's Section 5 power 'is appropriately

"congruence and proportionality" rationale suggests that it should be limited to such legislation. In *City of Boerne*, this formulation was announced in order to preserve the judiciary's role as final arbiter of the Constitution. *See City of Boerne*, 521 U.S. at 519–24, 117 S.Ct. at 2163–66 ("The power to interpret the Constitution in a case or controversy remains in the Judiciary."). In this perspective, Congress must be deterred from using its § 5 power to "decree the substance of the Fourteenth Amendment's restrictions," rather than to enforce those restrictions as delineated by the Judiciary. *Id.* at 519, 117 S.Ct. at 2164. Where legislation simply enforces judicially determined § 1 guarantees, no such restraint is necessary. Here, given the First Amendment violations asserted in the amended complaint, the ADA's and Rehabilitation Act's retaliation provisions directly serve to enforce the "actual guarantees" of § 1. Therefore, at least in this case, they need not be held up to the "congruence and proportionality" prism.

## ORDER

AND NOW, this 20th day of February, 2002, defendant Pennsylvania Department of Public Welfare's motion to dismiss the amended complaint is ruled on as follows:

1. Motion to dismiss Count I—denied.
2. Motion to dismiss Count II—denied.
3. Motion to dismiss Count III—granted. Plaintiff concedes the lack of federal jurisdiction under the Eleventh Amendment and has withdrawn the claims against defendants Richard Szczurowski, Cynthia Cygler, Roger Steir, Tommie Head, and Linda Rossi.

exercised only in response to state transgressions,'" abrogation requires "legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled." *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir.2001) (quoting *Garrett*, 121 S.Ct. at 964). This does not mean that Congress must *never* act under § 5 without first finding a pattern of unconstitutional conduct. In that event, Congress could not proscribe even blatantly unconstitutional state conduct without first tallying up the constitutional violations. *Garrett* and *City of Boerne* do not so cabin § 5 power. Instead, *Demshki* seemingly found no basis for a First Amendment (free speech or right to petition) claim, leaving plaintiff to show a "pattern of discrimination" that could be the subject of prophylactic legislation designed to enforce the Equal Protection Clause. *Demshki*, 255 F.3d at 988–89.