**In re James K. WALKER, Debtor.**

No. 02–50193–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

March 22, 2002.

Jose L. Soria, Office of the Texas Attorney General, Child Support Division, San Antonio, TX, for Office of the Texas Attorney General, Child Support Division.

John M. Tutt, San Antonio, TX, for James K. Walker.

MEMORANDUM DECISION AND ORDER DENYING
MOTION FOR ORDER DIRECTING REMOVAL
OF HOLD ON PASSPORT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the foregoing matter. The debtor seeks judicial intervention to remove a "hold" placed on the debtor's passport by the Secretary of State, pursuant to notification and request by the Texas Attorney General relating to the debtor's failure to pay child support obligations. The request is opposed by the Texas Attorney General. The United States did not enter an appearance.

Section 652 of title 42 of the United States Code imposes on the Secretary of State a duty to "refuse to issue a passport ... [or to] revoke, restrict, or limit a passport previously issued ..." to an individual, as and when the Secretary receives a certification by a state agency that the individual "owes arrearages of child support in an amount exceeding $5,000." 42 U.S.C. § 652(k); *see also* 22 C.F.R. § 51.70 (denial of passports). The debtor in this case complains that, in order to repay the child support arrearages owed, the debtor must work; that to work, he needs surgery on his back (the result of a work-related injury); that to get such surgery and to be able to live during the recuperation period, he needs to be with his wife, who is in the military and is currently assigned in Germany; and that, to get to Germany, he must have a valid passport. The "nail" that he lacks[1] is the passport, explaining the filing of this motion.

 Generally, responsibilities entrusted to a coordinate branch of government are not subject to being "second-guessed" by the courts. *See Baker v. Carr,* 369 U.S. 186, 210, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (explaining the parameters of what constitutes justiciable as opposed to nonjusticiable issues). There is, however, a recognized limitation on the power of the coordinate branches of government that their acts be constitutional and not in conflict with the Constitution's provisions. *See Bauer v. Acheson,* 106 F.Supp. 445, 449 (D.D.C.1952). Thus, even though the standards for issuing and not issuing passport are generally entrusted either to Congress or to the Department of State, both Congress and the Executive must act within the confines of the Constitution. *See United States v. Curtiss-Wright Export Corp.,* 299 U.S. 304, 320, 57 S.Ct. 216, 221, 81 L.Ed. 255 (1936). Thus, for example, the manner in which the Secretary elects to deny a passport to a given applicant must not be arbitrary or capricious, lest it violate the proscriptions of the Equal Protection Clause. *See Shachtman v. Dulles,* 225 F.2d 938 (D.C.Cir.1955).

 In fact, the very provision the subject of this motion has been challenged on constitutional grounds—and survived the challenge. *Eunique v. Powell,* 281 F.3d 940 (9th Cir.2002). There, the challenge mounted was that the statute infringed on a fundamental right, to wit, the right of travel. The Ninth Circuit acknowledged that there is indeed a constitutional right to international travel, but the right is not *fundamental* in the way that the right of interstate travel within the borders of the United States has been held to be. Under traditional due process analysis,[2] infringe-

---

1. "... [A] little neglect may breed mischief; for want of a nail the shoe was lost; for want of a shoe the horse was lost; and for want of a horse the rider was lost." Benjamin Franklin, *Poor Richard's Almanac* (1758).

2. One might argue that, in fact, it is equal protection analysis that is triggered, rather than due process analysis, though, in the context of federal statutes, the Supreme Court has effectively imported the Equal Protection Clause, a Fourteenth Amendment protection

ments on fundamental rights are subject to strict scrutiny analysis. When a given right is not deemed to be fundamental, however, the level of scrutiny is lowered, so that their regulation can be regulated within the bounds of ordinary due process only, deemed to track the "rational basis" analysis employed in ordinary equal protection analysis. *Id.; see also Haig v. Agee,* 453 U.S. 280, 307, 101 S.Ct. 2766, 2782, 69 L.Ed.2d 640 (1981).[3] Under this more relaxed test, the statute on its face reflects an appropriate government purpose and a reasonable means for effectuating that purpose. Said the Ninth Circuit in *Powell,*

> There can be no doubt that the failure of parents to support their children is recognized by our society as a serious offense against morals and welfare. It "is in violation of important social duties [and is] subversive of good order." *Braunfeld v. Brown,* 366 U.S. 599, 603, 81 S.Ct. 1144, 1146, 6 L.Ed.2d 563 (1961). It is the very kind of problem that the legislature can address.
>
> Moreover, the economic problems caused by parents who fail to provide support for their children are both well known and widespread. They can be

exacerbated when the non-paying parent is out of the state, as, of course, a parent traveling internationally must be. Indeed, even within the United States itself, the problem is serious....

... [I]nternational travel by what our society often calls "deadbeat parents" presents even more difficulties because the United States cannot easily reach them once they have left the country.... All of this not only illustrates the rationality of Congress' goal, but also demonstrates its rational connection to the passport denial in question.

*Eunique v. Powell, supra,* at 944–46. Thus, the individual constitutional rights of the debtor are not violated by this law. There remains, however, a more fundamental question: whether Congress had the power to make such a law in the first instance.

■ The Supreme Court in *Haig v. Agee* sustained a challenge to the Secretary's promulgating regulations that permitted the denial of passports to persons engaged in "activities abroad [which] are causing or are likely to cause serious damage to the national security or foreign policy of the United States." *Id.,* 453 U.S.

that applies on its face only to the states, into the Fifth Amendment by way of that amendment's Due Process Clause, which of course does apply to actions of the national government. *See generally Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659 (1976) (per curiam) (citing *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228, 43 L.Ed.2d 514 (1975) "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment.").

**3.** All laws must comport with the Equal Protection Clause, though the standard against which such laws is measured is normally the "rational basis" standard. *See City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439–40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, (1985); *Nordlinger v. Hahn,* 505

U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). The more searching "strict scrutiny" standard is applied only with respect to laws which either discriminate on the basis of a suspect classification or which purport to regulate or otherwise impinge on the exercise of a fundamental right. *See Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983). A statute satisfies the "rational basis" standard if there is a reasonable fit between a governmental purpose and the means chosen to advance that purpose. *See Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993); *see also Rodriguez v. Cook,* 169 F.3d 1176, 1181 (9th Cir.1999) (upholding the constitutionality of § 652(k)); *accord, Weinstein v. Albright,* 261 F.3d 127, 143 (2nd Cir.2001).

at 286, 101 S.Ct. 2766, 69 L.Ed.2d 640 (citing 22 C.F.R. § 51.70(b)(4)). The statute under consideration here seems to travel well beyond this nonjusticiable arena, however. Few would challenge reasonable restrictions on who does and who does not get a passport as a legitimate exercise of the Secretary of State's delegated right to control the issuance of passports. Here, however, the national government has been enlisted in the service of aiding enforcement of state-imposed child support obligations. Does Congress have the right to promulgate such legislation, and if so, under what enumerated power? *See* U.S. CONST., Art. I, § 8.

The Tenth Circuit upheld the constitutionality of the Child Support Enforcement Program, of which section 652(k) is a part, as a valid exercise of Congress' authority under the Spending Clause. *Kansas v. United States*, 214 F.3d 1196, 1198 (10th Cir.), *cert. denied* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); *see also* U.S. CONST., § 8, cl. 1. The court observed that "Congress' spending power enables it 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *Id.*, quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980); *see South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) (receipt of federal highway funds conditioned on states' raising their legal drinking age to 21).[4]

There is little reason to differ with or otherwise challenge the Tenth Circuit's holding, especially as the Supreme Court found insufficient cause to do so, having denied certiorari. There being a demonstrable basis for the exercise of Congress' legislative power, the law's validity survives constitutional challenge.

■ We are back at the beginning, then. If the law is otherwise constitutional, principles of justiciability prevent this court from interfering with the Secretary of State's exercise of executive authority in placing the hold on the debtor's passport— or with the Secretary of Health and Human Services' exercise of authority in certifying the debtor's child support obligations to the Secretary of State in order to initiate that hold. *See Bauer v. Acheson, supra.*

The motion is denied.

**So ORDERED.**

---

4. The Court in *Dole* spelled out four conditions for upholding a law enacted pursuant to the Spending Clause: First, Congress' object must be in pursuit of "the general welfare" (and substantial deference is accorded Congress' judgment in this regard). Second, if Congress desires to place conditions on the state's receipt of federal funds, it must do so unambiguously so that states know the consequences of their decision to participate. Third, the conditions must be rationally related to the federal interest in the particular program. Fourth, there can be no independent constitutional bar to the conditions. *Id.*