EDITH H. JONES, Circuit Judge,
with whom E. GRADY JOLLY, JERRY E. SMITH, RHESA HAWKINS BARKSDALE, EMILIO M. GARZA and DeMOSS, Circuit Judges, join, concurring in part and dissenting in part:
I concur in the court’s discussion of the merits of Pace’s claims, but I respectfully dissent from the majority’s conclusion that the State of Louisiana, by accepting federal education funds from 1996 to 1998 (the period here at issue), validly waived its Eleventh Amendment immunity from suit for violations of § 504 and the IDEA statute. Instead, we should hold that under these limited and unusual circumstances, the State did not knowingly waive its constitutional right to be free from suit by private citizens.[1]
Aexander Hamilton wrote:
It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the Union.
The FedeRalist No. 81, at 487-88 (Clint Rossiter ed., 1961). The Eleventh Amendment protects States from suit in federal *298 court precisely out of the recognition of their continued status as co-sovereigns. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993). For over one hundred years, the Supreme Court has “extended a State’s [constitutional] protection from suit to suits brought by the State’s own citizens.” Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-68, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997) (referring to Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).
There are two carefully construed exceptions whereby States may become subject to suits by private citizens. Congress may abrogate state sovereign immunity pursuant to § 5 of the Fourteenth Amendment, or the State may waive its sovereign immunity and give its consent to suit. See Coll. Sav. Bank v. Fla. Prepaid Postsec-ondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999). However, “[bjecause abrogation of sovereign immunity upsets the fundamental constitutional balance between the Federal Government and the States, ,.. and because States are unable directly to remedy a judicial misapprehension of that abrogation, the Court has adopted a particularly strict standard to evaluate claims that Congress has abrogated the States’ sovereign immunity.” Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) (citations and quotations omitted). “Similar solicitude for States’ sovereign immunity underlies the standard that this Court employs to determine whether a State has waived that immunity.” Id.
Travis Pace advances both abrogation and waiver theories in support of his claims against Louisiana.. The majority agrees with Pace that Louisiana waived its sovereign immunity as a condition of accepting federal funds under § 504 of the Rehabilitation Act and IDEA. In so doing, the majority has forsaken the “particularly strict standard” the Eleventh Amendment demands, ignored the Supreme Court’s settled test for evaluating a waiver of constitutional rights, and inexplicably discounted the unique factual context from which this case arose.
I. WAIVER
As a fundamental constitutional component, “[s]tate sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected.” Coll. Sav. Bank, 527 U.S. at 682, 119 S.Ct. at 2229. The same test used in evaluating waiver of other fundamental constitutional rights must be employed in the Eleventh Amendment context as well. As the Court held, there is no justification for creating a separate and distinct test for Eleventh Amendment waiver purposes. Thus, “[t]he classic description of an effective waiver of a constitutional right is the intentional relinquishment or abandonment of a knoum right or privilege.” Id. (citations and quotations omitted) (emphasis added). According to the sole applicable test, therefore, “waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.” Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986) (emphasis added). Moreover, “courts indulge every reasonable presumption against waiver of fundamental constitutional rights and ... do not presume acquiescence in the loss of fundamental rights.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). This circuit, at least until today, adhered to this uniform approach. “Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of *299 the relevant circumstances and likely con-sequencesU” United States v. Newell, 315 F.3d 510, 519 (5th Cir.2002)(quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)) (emphasis added). A valid waiver requires “actual knowledge of the existence of the right or privilege, full understanding of its meaning, and clear comprehension of the consequences of the waiver.” Id. (quoting Hatfield v. Scott, 306 F.3d 223, 230 (5th Cir.2002)) (emphasis in original).
The test for a State’s waiver of Eleventh Amendment immunity is no different because Congress sought to effect waiver under the Spending Clause. The Supreme Court “has repeatedly characterized ... Spending Clause legislation as ‘much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions.’ ” Barnes v. Gorman, 536 U.S. 181, 186, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981)). “Just as a valid contract requires offer and acceptance of its terms, the legitimacy of Congress’ power to legislate under the spending power ... rests on whether the [recipient] voluntarily and knowingly accepts the terms of the contract.” Barnes, 536 U.S. at 186, 122 S.Ct. 2097 (citations and quotations omitted) (emphasis added); see also Pennhurst, 465 U.S. at 99, 104 S.Ct. at 907 (the State’s consent to suit must be “unequivocally expressed”). As a result, the “test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one.” Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985).
Despite this clear authority, the majority has crafted a novel waiver test for Spending Clause cases. Relying on South Dakota v. Dole, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), the majority draws two conclusions: (1) a State’s waiver is knowing so long as Congress satisfies the “clear statement rule,” and (2) the State’s waiver is voluntary so long as it is “non-coercive.” Although I agree with the latter conclusion, the former is incorrect.[2] College Savings Bank controls the Eleventh Amendment waiver inquiry and demands more than a congressional “clear statement” — it also requires the State to make a “clear declaration” of its intent to waive its immunity. In College Savings Bank, the Supreme Court recognized that for a State “knowingly” to waive its sovereign immunity, not only must Congress make clear its intention to so condition federal funds, but the State must expressly *300 and unequivocally waive its immunity. “There is a fundamental difference between a State’s expressing unequivocally that it waives its immunity and Congress’s expressing unequivocally its intention that if the State takes certain action it shall be deemed to have that immunity.” Coll. Sav. Bank, 527 U.S. at 680-81, 119 S.Ct. at 2228. “In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought by individuals.” Id.
Despite the majority’s assertion to the contrary, College Savings Bank confirms that Dole’s “clear statement” requirement is only half of the waiver equation. See Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 113-14 (2d Cir.2001) (concluding that “a clear expression of Congress’s intent ... alone is not sufficient ... to find that [the State] actually waived its sovereign immunity by accepting federal funds”).- “The whole point of requiring a ‘clear declaration’ by the State of its waiver is to be certain that the State in fact consents to suit.” Coll. Sav. Bank, 527 U.S. at 680, 119 S.Ct. at 2228 (emphasis in original). “Whether Congress clearly required that a State waive its immunity before accepting federal funds (the first inquiry) is not the same thing, however, as whether the State clearly declared its knowing waiver (the second inquiry).” Douglas v. Cal. Dep’t of Youth Auth., 285 F.3d 1226, 1228 (O’Scannlain, J., dissenting from denial of petition for rehearing en banc)(emphasis in original). “The mere receipt of federal funds cannot establish that a State has consented to suit in federal court.” Atascadero, 473 U.S. at 246-47, 105 S.Ct. 3142.[3]
For a State to evince its “clear declaration” of intent to waive sovereign immunity, it must possess “actual knowledge of the existence of the right or privilege, full understanding of its meaning, and clear comprehension of the consequences of the waiver.” Newell, 315 F.3d at 519 (citations and quotations omitted) (emphasis in original). In all but the rarest of circumstances, acceptance of federal funds offered in accordance with the “clear statement rule” will meet this test. This case represents an exception to the general rule.
The majority ignores the fact that until the mid-1990’s, it was assumed that Congress could abrogate state sovereign immunity in legislation enacted pursuant to its Article I enumerated powers. The Supreme Court held otherwise in Seminole Tribe v. Florida, 517 U.S. 44, 72-73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), while reaffirming that abrogation remained permissible through a proper exercise of power Under § 5 of the Fourteenth Amendment. Id. at 59, 116 S.Ct. 1114. In the statutes here at issue — ADA, § 504 and IDEA — abrogation was enacted under the Commerce Clause. Since, however, all three statutes enhance the rights of the disabled, and all three express a clear congressional intent to abridge the States’ Eleventh Amendment immunity, féderal courts, .routinely permitted suits by private individuals to proceed against the States. As late as 1998, while applying the Supreme Court’s narrow construction of the § 5 abrogation authority,[4] this court still held that the ADA validly abrogated state *301 sovereign immunity. Coolbaugh v. Louisiana, 136 F.3d 430 (5th Cir.1998), cert. denied, 525 U.S. 819, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998) overruled by Reicken-backer v. Foster, 274 F.3d 974 (5th Cir.2001).[5]
Surely Louisiana should not be penalized for construing the ADA — and counterpart abrogation language in § 504 and IDEA — just as this court subsequently did in Coolbaugh. Instead, the State acted quite rationally in assuming between 1996 and 1998 that it had no sovereign immunity to waive when it accepted federal education funds under conditions specified by § 504 and IDEA. The State voluntarily accepted federal funds, but its acceptance was not a “knowing” waiver of immunity. As the Second Circuit put it, since “the proscriptions of Title II [of the ADA] and § 504 are virtually identical, a State accepting federal funds could not have understood that in doing so it was actually abandoning its sovereign immunity from private damage suits, since by all reasonable appearances state sovereign immunity had already been lost.” Garcia, 280 F.3d at 114 (citations omitted).[6]
The majority offers two principal arguments against this result. First, the majority conflates abrogation and waiver when positing that “Louisiana did have Eleventh Amendment immunity to waive by accepting the clearly conditioned federal funds.” See Majority Op., at 285. (emphasis in original). On the contrary, Coolbaugh confirmed, until Garrett and Reickenbacker overruled it, that Congress had validly exercised its abrogation authority, rendering Louisiana amenable to suit notwithstanding the Eleventh Amendment. The majority’s suggestion that Congress can abrogate sovereign immunity, but still permit the States to retain their Eleventh Amendment immunity, misapprehends the import of abrogation.[7]
Still, Congress may, in its discretion, choose to trigger enforcement of any federal statute, even after it has abrogated sovereign immunity, on the receipt of federal funds. In response, a State, by refusing federal funds, may reject the terms of the “contract” and potentially avoid statutory liability to private individuals. But whether it can avoid liability based upon a contractual/waiver theory is a different question from whether it retained Elev *302 enth Amendment sovereign immunity post-abrogation.[8] Thus, the relevant Eleventh Amendment inquiry remains whether Louisiana reasonably believed, based on objective evidence, that the Rehabilitation Act and the IDEA validly abrogated its sovereign immunity — not whether it could have chosen to reject the federal funds anyway.
Second, the majority contends that requiring the State to make a “clear declaration” problematically “engraft[s] a subjective-intent element onto an otherwise objective Spending Clause waiver inquiry.” See Majority Op. at 284. Unfortunately, the majority misunderstands the nature of the “clear declaration” requirement, a requirement consonant with the Supreme Court’s longstanding objective approach to waiver. The Supreme Court uniformly applies a “totality of the circumstances” test to waiver questions involving fundamental constitutional rights. Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979). “Only if the totality of the circumstances ... reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that, the ... rights have been waived.” See Burbine, 475 U.S. at 421, 106 S.Ct. at 1135. Hence, the Supreme Court considers a variety of objective factors, not subjective intent, to determine whether a constitutional right has validly been waived. Fare, 442 U.S. at 725, 99 S.Ct. at 2572; see also United States v. Sonderup, 639 F.2d 294, 298 (5th Cir.1981) (relying on the objective indicia to determine whether a voluntary, knowing and intelligent waiver was made). College Savings Bank’s “clear declaration” requirement reiterates the Supreme Court’s waiver test in the Eleventh Amendment context, and so would I.[9]
Given this court’s ruling in Coolbaugh that the State had no immunity to waive, followed by an unsuccessful en banc poll and the Supreme Court’s denial of certio-rari in that case, it is inconceivable that Louisiana somehow, based on the “straightforward objective facts,” knowingly chose to waive a right that was nonexistent when it acted. In a sense, the State of Louisiana is being forced, by today’s majority, to bear the burden of this court’s mistake of law in Coolbaugh. Consider this analogy: the police instruct a criminal defendant, “for his own good,” to sign a waiver of counsel form, while telling him that the waiver is “meaningless, because you have no counsel rights to waive.” Who would argue that the waiver is knowing, especially if the police showed him a court decision confirming this view? That the dupe is an individual defendant rather *303 than the State does not, per College Savings, make this a different case, nor does the fact that the waiver falls under the Spending Clause rather than some other type of enactment. The majority’s opinion violates College Savings Bank,.
In this rare instance, Louisiana could not have knowingly waived its sovereign immunity in the relevant time period before the Garrett decision. The majority’s approach strangely counsels States to disregard governing caselaw when Supreme Court doctrine is evolving. Such an argument makes no more sense in this unusual context than it would in any other.
II. ABROGATION
Pace alternatively argues, and this dissent must determine, whether Congress abrogated Louisiana’s sovereign immunity with respect to claims brought under Title II, § 504, and the IDEA. Pace would extend the Court’s recent decision in Tennessee v. Lane, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), which held that Title II of the ADA validly abrogates State sovereign immunity insofar as it implicates the physical accessibility of the fundamental constitutional right of access to the courts. The majority here, having found a waiver of the State’s immunity, declares it unnecessary to opine on abrogation. The majority goes on, however, to observe that, in Lane, the Supreme Court “refused to consider [whether Title II abrogates] other rights, including those considered to be fundamental under the Constitution.” See Majority Op. at 287, citing 124 S.Ct. at 1993. The majority also comments that the Court “has never before recognized access to public education or freedom from disability discrimination in education as fundamental rights.” Id., citing Plyler v. Doe, 457 U.S. 202, 221, 223, 102 S.Ct. 2382, 2396-98, 72 L.Ed.2d 786 (1982); City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 446, 105 S.Ct. 3249, 3257, 87 L.Ed.2d 313 (1985).
I agree with the majority’s dicta that suggests Lane is currently of limited application. Moreover, because Lane was written very narrowly, I conclude that this court’s decision in Reickenbacker remains valid in holding that ADA Title II, apart from the Lane scenario, does not validly abrogate States’ Eleventh Amendment immunity. See Reickenbacker, 274, F.3d at 983. The fate of § 504 abrogation was also sealed in Reickenbacker based on the court’s conclusion that Title II and § 504 impose “virtually identical” obligations. Id. For the reasons stated in Reickenbacker and in the panel opinion, I would hold that Congress could not constitutionally abrogate state sovereign immunity in § 504 or the similarly structured IDEA statute pursuant to § 5 of the Fourteenth Amendment. The remedies imposed by those laws “far exceed [] [those] imposed by the Constitution, and [I] cannot conclude that they are congruent and proportional to the legislative findings of unconstitutional discrimination against the disabled by the states.” Reickenbacker, 274 F.3d at 983.
III. CONCLUSION
For the foregoing reasons, I conclude that during a narrow period of time, based on uncertainty in the Supreme Court’s evolving Eleventh Amendment doctrine, the State of Louisiana did not knowingly waive its Eleventh Amendment sovereign immunity when it accepted federal funds under § 2000d-7(a).
I respectfully dissent.

. Dole’s "non-coercive” requirement is a satisfactory proxy for the “voluntariness” prong of the waiver inquiry. Thus, under the current state of the law, § 2000d-7(a) is not unconstitutionally coercive. . As a-result, the State of Louisiana acted voluntarily for purposes of the constitutional waiver test. But, with due regard for precedent, I am compelled to raise the following question: "If not now, and on this showing, when, and on what showing" will federal grants be deemed unconstitutionally coercive? Cf. Spangler v. Pasadena City Bd. of Ed., 611 F.2d 1239, 1240 (9th Cir.1979). The Rehabilitation Act, pursuant to 29 U.S.C. § 794(a), requires non-consenting States to forfeit all federal funds. For the Louisiana Department of Education, renouncing all federal funds would cut its budget by $804,269,621, or 75%. Dole counseled that "in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which pressure turns into compulsion.” 483 U.S. at 211, 107 S.Ct. 2793 (emphasis added). To date, the Supreme Court has not found a case that warranted vindication of this principle. Nevertheless, Louisiana and its children would suffer extreme consequences here if the State were to lose massive federal assistance by asserting its constitutional right to sovereign immunity.

. Furthermore, the majority's reliance on the precedents of other circuits is unpersuasive. Those circuits, like our court today, focused exclusively on whether Congress clearly expressed its intention to condition acceptance of federal funds on waiver of immunity — not whether the State reasonably believed it was waiving immunity by accepting federal funds.

. See City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

. Reickenbacker's holding flows from the Supreme Court's decision in Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 368, 121 S.Ct. 955, 964, 148 L.Ed.2d 866 (2001), which held that Title I of the ADA did not validly abrogate state sovereign immunity pursuant to § 5 of the Fourteenth Amendment. Because Title II of the ADA and § 504 of the Rehabilitation Act offer virtually identical protections, the abrogation analysis with regard to the two statutes is the same. Reick-enbacker, 274 F.3d at 977 n. 17; see also Garcia, 280 F.3d at 114; Hoekstra v. Indep. Sch. Dist., 103 F.3d 624, 626 (8th Cir.1996).

. Conversely, after Garrett was decided, the State defendants could knowingly waive their immunity because they could have reasonably anticipated the ability to preserve sovereign immunity by declining federal funds under the Rehabilitation Act and the IDEA. See Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (invalidating an abrogation of Eleventh Amendment immunity pursuant to Title I of ADA).

.The unmistakable difference between abrogation and waiver is complicated by statutes, like § 2000d-7(a), that attempt to achieve both in the same provision. Nevertheless, the circuit courts and the panel opinion here agree that statutory language may, in fact, constitute both an attempted abrogation and conditional waiver provision. See, e.g., Stanley v. Litscher, 213 F.3d 340, 344 (7th Cir.2000); Robinson v. Kansas, 295 F.3d 1183, 1189-90 (10th Cir.2002). However, a statute’s capacity to serve dual purposes does not justify the majority's confusion of the two concepts.

. The majority implies that Louisiana's self-interested acceptance of funds should prevent the State from arguing that it might have chosen to forego the funds for the sake of maintaining sovereign immunity. Louisiana’s mistaken (though eminently reasonable) belief that abrogation had occurred distorted this calculation, however. That the State does have immunity to waive now throws into high relief the potential coercion inherent in the federal government's funding condition. The "cost” of Louisiana’s resting on its constitutional right is over $800 million annually!

. The majority's approach unquestionably achieves a bright-line rule that the Supreme Court's traditional waiver inquiry cannot. However, this approach is impermissible in the context of waiver of fundamental constitutional rights.
An express written statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver. The question is not one of fonn, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case.
North Carolina v. Butler, 441 U.S. 369, 374, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979).