# SOUTH DAKOTA *v.* DOLE, SECRETARY OF TRANSPORTATION

No. 86–260.   Argued April 28, 1987—Decided June 23, 1987

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, MARSHALL, BLACKMUN, POWELL, STEVENS, and SCALIA, JJ., joined. BRENNAN, J., *post*, p. 212, and O'CONNOR, J., *post*, p. 212, filed dissenting opinions.

*Roger A. Tellinghuisen*, Attorney General of South Dakota, argued the cause for petitioner. With him on the briefs was *Craig M. Eichstadt*, Assistant Attorney General.

*Deputy Solicitor General Cohen* argued the cause for respondent. With him on the brief were *Solicitor General Fried, Assistant Attorney General Willard, Andrew J. Pincus, Leonard Schaitman*, and *Robert V. Zener.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the State of Colorado et al. by *Anthony J. Celebrezze, Jr.*, Attorney General of Ohio, *William Damsel* and *Shawn H. Nau*, Assistant Attorneys General, *Joel S. Taylor*, and *Nancy J. Miller*, joined by the Attorneys General for their respective States as follows: *Duane Woodard* of Colorado, *Warren Price III* of Hawaii, *Robert T. Stephan* of Kansas, *William J. Guste, Jr.*, of Louisiana, *Mike Greely* of Montana, *T. Travis Medlock* of South Carolina, *W. J. Michael Cody* of Tennessee, *Jeffrey L. Amestoy* of Vermont, and *Joseph B. Meyer* of Wyoming; for the Mountain States Legal Foundation et al. by *Hal Stratton*, Attorney General of New Mexico, *Constance E. Brooks*, and *Casey Shpall;* for the National Conference of State Legislatures et al. by *Benna Ruth Solomon, Beate Bloch*, and *Larry L. Simms;* for the National Beer Wholesalers' Association et al. by *E. Barrett Prettyman, Jr., John G. Roberts, Jr.*, and *John F. Stasiowski;* and for Phillip J. MacDonnell et al. by *Morton Siegel, Michael A. Moses, Richard G. Schoenstadt*, and *James L. Webster.*

Briefs of *amici curiae* urging affirmance were filed for the Insurance Institute for Highway Safety et al. by *Andrew R. Hricko, Michele McDow-*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner South Dakota permits persons 19 years of age or older to purchase beer containing up to 3.2% alcohol. S. D. Codified Laws § 35–6–27 (1986). In 1984 Congress enacted 23 U. S. C. § 158 (1982 ed., Supp. III), which directs the Secretary of Transportation to withhold a percentage of federal highway funds otherwise allocable from States "in which the purchase or public possession . . . of any alcoholic beverage by a person who is less than twenty-one years of age is lawful." The State sued in United States District Court seeking a declaratory judgment that § 158 violates the constitutional limitations on congressional exercise of the spending power and violates the Twenty-first Amendment to the United States Constitution. The District Court rejected the State's claims, and the Court of Appeals for the Eighth Circuit affirmed. 791 F. 2d 628 (1986).

In this Court, the parties direct most of their efforts to defining the proper scope of the Twenty-first Amendment. Relying on our statement in *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.,* 445 U. S. 97, 110 (1980), that the "Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system," South Dakota asserts that the setting of minimum drinking ages is clearly within the "core powers" reserved to the States under § 2 of the Amendment.[1] Brief for Petitioner 43–44. Section 158, petitioner claims, usurps

---

*ell Fields,* and *Ronald G. Precup;* for the National Council on Alcoholism et al. by *Charles R. Walker III;* for the National Safety Council by *Harry N. Rosenfield;* and for United States Senator Frank R. Lautenberg et al. by *Thomas F. Campion* and *Michael J. Faigen.*

[1] Section 2 of the Twenty-first Amendment provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

that core power. The Secretary in response asserts that the Twenty-first Amendment is simply not implicated by § 158; the plain language of § 2 confirms the States' broad power to impose restrictions on the sale and distribution of alcoholic beverages but does not confer on them any power to *permit* sales that Congress seeks to *prohibit*. Brief for Respondent 25–26. That Amendment, under this reasoning, would not prevent Congress from affirmatively enacting a national minimum drinking age more restrictive than that provided by the various state laws; and it would follow *a fortiori* that the indirect inducement involved here is compatible with the Twenty-first Amendment.

These arguments present questions of the meaning of the Twenty-first Amendment, the bounds of which have escaped precise definition. *Bacchus Imports, Ltd.* v. *Dias*, 468 U. S. 263, 274–276 (1984); *Craig* v. *Boren*, 429 U. S. 190, 206 (1976). Despite the extended treatment of the question by the parties, however, we need not decide in this case whether that Amendment would prohibit an attempt by Congress to legislate directly a national minimum drinking age. Here, Congress has acted indirectly under its spending power to encourage uniformity in the States' drinking ages. As we explain below, we find this legislative effort within constitutional bounds even if Congress may not regulate drinking ages directly.

The Constitution empowers Congress to "lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." Art. I, § 8, cl. 1. Incident to this power, Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power "to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *Fullilove* v. *Klutznick*, 448 U. S. 448, 474 (1980) (opinion of Burger, C. J.). See *Lau* v. *Nichols*, 414 U. S. 563, 569 (1974); *Ivanhoe Irrigation Dist.* v. *McCracken*, 357 U. S. 275, 295 (1958); *Oklahoma*

v. *Civil Service Comm'n,* 330 U. S. 127, 143–144 (1947); *Steward Machine Co.* v. *Davis,* 301 U. S. 548 (1937). The breadth of this power was made clear in *United States* v. *Butler,* 297 U. S. 1, 66 (1936), where the Court, resolving a longstanding debate over the scope of the Spending Clause, determined that "the power of Congress to authorize expenditure of public moneys for public purposes is not limited by the direct grants of legislative power found in the Constitution." Thus, objectives not thought to be within Article I's "enumerated legislative fields," *id.,* at 65, may nevertheless be attained through the use of the spending power and the conditional grant of federal funds.

The spending power is of course not unlimited, *Pennhurst State School and Hospital* v. *Halderman,* 451 U. S. 1, 17, and n. 13 (1981), but is instead subject to several general restrictions articulated in our cases. The first of these limitations is derived from the language of the Constitution itself: the exercise of the spending power must be in pursuit of "the general welfare." See *Helvering* v. *Davis,* 301 U. S. 619, 640–641 (1937); *United States* v. *Butler, supra,* at 65. In considering whether a particular expenditure is intended to serve general public purposes, courts should defer substantially to the judgment of Congress. *Helvering* v. *Davis, supra,* at 640, 645.[2] Second, we have required that if Congress desires to condition the States' receipt of federal funds, it "must do so unambiguously . . . , enabl[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Pennhurst State School and Hospital* v. *Halderman, supra,* at 17. Third, our cases have suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated "to the federal interest in particular national projects or programs." *Massachusetts* v. *United States,* 435 U. S. 444, 461

---

[2] The level of deference to the congressional decision is such that the Court has more recently questioned whether "general welfare" is a judicially enforceable restriction at all. See *Buckley* v. *Valeo,* 424 U. S. 1, 90–91 (1976) *(per curiam).*

(1978) (plurality opinion).   See also *Ivanhoe Irrigation Dist.* v. *McCracken, supra,* at 295, ("[T]he Federal Government may establish and impose reasonable conditions relevant to federal interest in the project and to the over-all objectives thereof").   Finally, we have noted that other constitutional provisions may provide an independent bar to the conditional grant of federal funds.   *Lawrence County* v. *Lead-Deadwood School Dist.,* 469 U. S. 256, 269–270 (1985); *Buckley* v. *Valeo,* 424 U. S. 1, 91 (1976) *(per curiam); King* v. *Smith,* 392 U. S. 309, 333, n. 34 (1968).

South Dakota does not seriously claim that § 158 is inconsistent with any of the first three restrictions mentioned above.   We can readily conclude that the provision is designed to serve the general welfare, especially in light of the fact that "the concept of welfare or the opposite is shaped by Congress . . . ."   *Helvering* v. *Davis, supra,* at 645.   Congress found that the differing drinking ages in the States created particular incentives for young persons to combine their desire to drink with their ability to drive, and that this interstate problem required a national solution.   The means it chose to address this dangerous situation were reasonably calculated to advance the general welfare.   The conditions upon which States receive the funds, moreover, could not be more clearly stated by Congress.   See 23 U. S. C. § 158 (1982 ed., Supp. III).   And the State itself, rather than challenging the germaneness of the condition to federal purposes, admits that it "has never contended that the congressional action was . . . unrelated to a national concern in the absence of the Twenty-first Amendment."   Brief for Petitioner 52. Indeed, the condition imposed by Congress is directly related to one of the main purposes for which highway funds are expended—safe interstate travel.   See 23 U. S. C. § 101(b).[3]

---

[3] Our cases have not required that we define the outer bounds of the "germaneness" or "relatedness" limitation on the imposition of conditions under the spending power.   *Amici* urge that we take this occasion to establish that a condition on federal funds is legitimate only if it relates di-

This goal of the interstate highway system had been frustrated by varying drinking ages among the States. A Presidential commission appointed to study alcohol-related accidents and fatalities on the Nation's highways concluded that the lack of uniformity in the States' drinking ages created "an incentive to drink and drive" because "young persons commut[e] to border States where the drinking age is lower." Presidential Commission on Drunk Driving, Final Report 11 (1983). By enacting § 158, Congress conditioned the receipt of federal funds in a way reasonably calculated to address this particular impediment to a purpose for which the funds are expended.

The remaining question about the validity of § 158—and the basic point of disagreement between the parties—is whether the Twenty-first Amendment constitutes an "independent constitutional bar" to the conditional grant of federal funds. *Lawrence County* v. *Lead-Deadwood School Dist., supra,* at 269–270. Petitioner, relying on its view that the Twenty-first Amendment prohibits *direct* regulation of drinking ages by Congress, asserts that "Congress may not use the spending power to regulate that which it is prohibited from regulating directly under the Twenty-first Amendment." Brief for Petitioner 52–53. But our cases show that this "independent constitutional bar" limitation on the spending power is not of the kind petitioner suggests. *United States* v. *Butler, supra,* at 66, for example, established that the constitutional limitations on Congress when exercising its spending power are less exacting than those on its authority to regulate directly.

---

rectly to the purpose of the expenditure to which it is attached. See Brief for National Conference of State Legislatures et al. as *Amici Curiae* 10. Because petitioner has not sought such a restriction, see Tr. of Oral Arg. 19–21, and because we find any such limitation on conditional federal grants satisfied in this case in any event, we do not address whether conditions less directly related to the particular purpose of the expenditure might be outside the bounds of the spending power.

We have also held that a perceived Tenth Amendment limitation on congressional regulation of state affairs did not concomitantly limit the range of conditions legitimately placed on federal grants. In *Oklahoma* v. *Civil Service Comm'n,* 330 U. S. 127 (1947), the Court considered the validity of the Hatch Act insofar as it was applied to political activities of state officials whose employment was financed in whole or in part with federal funds. The State contended that an order under this provision to withhold certain federal funds unless a state official was removed invaded its sovereignty in violation of the Tenth Amendment. Though finding that "the United States is not concerned with, and has no power to regulate, local political activities as such of state officials," the Court nevertheless held that the Federal Government "does have power to fix the terms upon which its money allotments to states shall be disbursed." *Id.,* at 143. The Court found no violation of the State's sovereignty because the State could, and did, adopt "the 'simple expedient' of not yielding to what she urges is federal coercion. The offer of benefits to a state by the United States dependent upon cooperation by the state with federal plans, assumedly for the general welfare, is not unusual." *Id.,* at 143–144 (citation omitted). See also *Steward Machine Co.* v. *Davis,* 301 U. S., at 595 ("There is only a condition which the state is free at pleasure to disregard or to fulfill"); *Massachusetts* v. *Mellon,* 262 U. S. 447, 482 (1923).

These cases establish that the "independent constitutional bar" limitation on the spending power is not, as petitioner suggests, a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly. Instead, we think that the language in our earlier opinions stands for the unexceptionable proposition that the power may not be used to induce the States to engage in activities that would themselves be unconstitutional. Thus, for example, a grant of federal funds conditioned on invidiously discriminatory state action or the infliction of cruel and unusual punishment would be an illegitimate exercise of the Con-

gress' broad spending power. But no such claim can be or is made here. Were South Dakota to succumb to the blandishments offered by Congress and raise its drinking age to 21, the State's action in so doing would not violate the constitutional rights of anyone.

Our decisions have recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which "pressure turns into compulsion." *Steward Machine Co.* v. *Davis, supra,* at 590. Here, however, Congress has directed only that a State desiring to establish a minimum drinking age lower than 21 lose a relatively small percentage of certain federal highway funds. Petitioner contends that the coercive nature of this program is evident from the degree of success it has achieved. We cannot conclude, however, that a conditional grant of federal money of this sort is unconstitutional simply by reason of its success in achieving the congressional objective.

When we consider, for a moment, that all South Dakota would lose if she adheres to her chosen course as to a suitable minimum drinking age is 5% of the funds otherwise obtainable under specified highway grant programs, the argument as to coercion is shown to be more rhetoric than fact. As we said a half century ago in *Steward Machine Co.* v. *Davis:*

> "[E]very rebate from a tax when conditioned upon conduct is in some measure a temptation. But to hold that motive or temptation is equivalent to coercion is to plunge the law in endless difficulties. The outcome of such a doctrine is the acceptance of a philosophical determinism by which choice becomes impossible. Till now the law has been guided by a robust common sense which assumes the freedom of the will as a working hypothesis in the solution of its problems." 301 U. S., at 589–590.

Here Congress has offered relatively mild encouragement to the States to enact higher minimum drinking ages than they would otherwise choose. But the enactment of such laws remains the prerogative of the States not merely in the-

ory but in fact. Even if Congress might lack the power to impose a national minimum drinking age directly, we conclude that encouragement to state action found in § 158 is a valid use of the spending power. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE BRENNAN, dissenting.

I agree with JUSTICE O'CONNOR that regulation of the minimum age of purchasers of liquor falls squarely within the ambit of those powers reserved to the States by the Twenty-first Amendment. See *post*, at 218. Since States possess this constitutional power, Congress cannot condition a federal grant in a manner that abridges this right. The Amendment, itself, strikes the proper balance between federal and state authority. I therefore dissent.

JUSTICE O'CONNOR, dissenting.

The Court today upholds the National Minimum Drinking Age Amendment, 23 U. S. C. § 158 (1982 ed., Supp. III), as a valid exercise of the spending power conferred by Article I, § 8. But § 158 is not a condition on spending reasonably related to the expenditure of federal funds and cannot be justified on that ground. Rather, it is an attempt to regulate the sale of liquor, an attempt that lies outside Congress' power to regulate commerce because it falls within the ambit of § 2 of the Twenty-first Amendment.

My disagreement with the Court is relatively narrow on the spending power issue: it is a disagreement about the application of a principle rather than a disagreement on the principle itself. I agree with the Court that Congress may attach conditions on the receipt of federal funds to further "the federal interest in particular national projects or programs." *Massachusetts* v. *United States*, 435 U. S. 444, 461 (1978); see *Oklahoma* v. *Civil Service Comm'n*, 330 U. S. 127, 143–144 (1947); *Steward Machine Co.* v. *Davis*, 301 U. S. 548 (1937). I also subscribe to the established proposition

that the reach of the spending power "is not limited by the direct grants of legislative power found in the Constitution." *United States* v. *Butler*, 297 U. S. 1, 66 (1936). Finally, I agree that there are four separate types of limitations on the spending power: the expenditure must be for the general welfare, *Helvering* v. *Davis*, 301 U. S. 619, 640–641 (1937), the conditions imposed must be unambiguous, *Pennhurst State School and Hospital* v. *Halderman*, 451 U. S. 1, 17 (1981), they must be reasonably related to the purpose of the expenditure, *Massachusetts* v. *United States, supra,* at 461, and the legislation may not violate any independent constitutional prohibition, *Lawrence County* v. *Lead-Deadwood School Dist.*, 469 U. S. 256, 269–270 (1985). *Ante,* at 207–208. Insofar as two of those limitations are concerned, the Court is clearly correct that § 158 is wholly unobjectionable. Establishment of a national minimum drinking age certainly fits within the broad concept of the general welfare and the statute is entirely unambiguous. I am also willing to assume, *arguendo*, that the Twenty-first Amendment does not constitute an "independent constitutional bar" to a spending condition. See *ante,* at 209–211.

But the Court's application of the requirement that the condition imposed be reasonably related to the purpose for which the funds are expended is cursory and unconvincing. We have repeatedly said that Congress may condition grants under the spending power only in ways reasonably related to the purpose of the federal program. *Massachusetts* v. *United States, supra,* at 461; *Ivanhoe Irrigation Dist.* v. *McCracken,* 357 U. S. 275, 295 (1958) (the United States may impose "reasonable conditions relevant to federal interest in the project and to the over-all objectives thereof"); *Steward Machine Co.* v. *Davis, supra,* at 590 ("We do not say that a tax is valid, when imposed by act of Congress, if it is laid upon the condition that a state may escape its operation through the adoption of a statute unrelated in subject matter to activities fairly within the scope of national policy and power"). In my view, establishment of a minimum drinking

age of 21 is not sufficiently related to interstate highway construction to justify so conditioning funds appropriated for that purpose.

In support of its contrary conclusion, the Court relies on a supposed concession by counsel for South Dakota that the State "has never contended that the congressional action was . . . unrelated to a national concern in the absence of the Twenty-first Amendment." Brief for Petitioner 52. In the absence of the Twenty-first Amendment, however, there is a strong argument that the Congress might regulate the conditions under which liquor is sold under the commerce power, just as it regulates the sale of many other commodities that are in or affect interstate commerce. The fact that the Twenty-first Amendment is crucial to the State's argument does not, therefore, amount to a concession that the condition imposed by § 158 is reasonably related to highway construction. The Court also relies on a portion of the argument transcript in support of its claim that South Dakota conceded the reasonable relationship point. *Ante,* at 208–209, n. 3, citing Tr. of Oral Arg. 19–21. But counsel's statements there are at best ambiguous. Counsel essentially said no more than that he was not prepared to argue the reasonable relationship question discussed at length in the Brief for the National Conference of State Legislatures et al. as *Amici Curiae.*

Aside from these "concessions" by counsel, the Court asserts the reasonableness of the relationship between the supposed purpose of the expenditure—"safe interstate travel"—and the drinking age condition. *Ante,* at 208. The Court reasons that Congress wishes that the roads it builds may be used safely, that drunken drivers threaten highway safety, and that young people are more likely to drive while under the influence of alcohol under existing law than would be the case if there were a uniform national drinking age of 21. It hardly needs saying, however, that if the purpose of § 158 is to deter drunken driving, it is far too over- and under-inclusive. It is over-inclusive because it stops teenagers from drinking even when they are not about to drive on in-

terstate highways. It is under-inclusive because teenagers pose only a small part of the drunken driving problem in this Nation. See, *e. g.*, 130 Cong. Rec. 18648 (1984) (remarks of Sen. Humphrey) ("Eighty-four percent of all highway fatalities involving alcohol occur among those whose ages exceed 21"); *id.*, at 18651 (remarks of Sen. McClure) ("Certainly, statistically, if you use that one set of statistics, then the mandatory drinking age ought to be raised at least to 30"); *ibid.* (remarks of Sen. Symms) ("[M]ost of the studies point out that the drivers of age 21–24 are the worst offenders").

When Congress appropriates money to build a highway, it is entitled to insist that the highway be a safe one. But it is not entitled to insist as a condition of the use of highway funds that the State impose or change regulations in other areas of the State's social and economic life because of an attenuated or tangential relationship to highway use or safety. Indeed, if the rule were otherwise, the Congress could effectively regulate almost any area of a State's social, political, or economic life on the theory that use of the interstate transportation system is somehow enhanced. If, for example, the United States were to condition highway moneys upon moving the state capital, I suppose it might argue that interstate transportation is facilitated by locating local governments in places easily accessible to interstate highways—or, conversely, that highways might become overburdened if they had to carry traffic to and from the state capital. In my mind, such a relationship is hardly more attenuated than the one which the Court finds supports § 158. Cf. Tr. of Oral Arg. 39 (counsel for the United States conceding that to condition a grant upon adoption of a unicameral legislature would violate the "germaneness" requirement).

There is a clear place at which the Court can draw the line between permissible and impermissible conditions on federal grants. It is the line identified in the Brief for the National Conference of State Legislatures et al. as *Amici Curiae:*

"Congress has the power to *spend* for the general welfare, it has the power to *legislate* only for delegated purposes. . . .

"The appropriate inquiry, then, is whether the spending requirement or prohibition is a condition on a grant or whether it is regulation. The difference turns on whether the requirement specifies in some way how the money should be spent, so that Congress' intent in making the grant will be effectuated. Congress has no power under the Spending Clause to impose requirements on a grant that go beyond specifying how the money should be spent. A requirement that is not such a specification is not a condition, but a regulation, which is valid only if it falls within one of Congress' delegated regulatory powers." *Id.*, at 19–20.

This approach harks back to *United States* v. *Butler*, 297 U. S. 1 (1936), the last case in which this Court struck down an Act of Congress as beyond the authority granted by the Spending Clause. There the Court wrote that "[t]here is an obvious difference between a statute stating the conditions upon which moneys shall be expended and one effective only upon assumption of a contractual obligation to submit to a regulation which otherwise could not be enforced." *Id.*, at 73. The *Butler* Court saw the Agricultural Adjustment Act for what it was—an exercise of regulatory, not spending, power. The error in *Butler* was not the Court's conclusion that the Act was essentially regulatory, but rather its crabbed view of the extent of Congress' regulatory power under the Commerce Clause. The Agricultural Adjustment Act was regulatory but it was regulation that today would likely be considered within Congress' commerce power. See, *e. g., Katzenbach* v. *McClung*, 379 U. S. 294 (1964); *Wickard* v. *Filburn*, 317 U. S. 111 (1942).

While *Butler*'s authority is questionable insofar as it assumes that Congress has no regulatory power over farm pro-

duction, its discussion of the spending power and its description of both the power's breadth and its limitations remain sound. The Court's decision in *Butler* also properly recognizes the gravity of the task of appropriately limiting the spending power. If the spending power is to be limited only by Congress' notion of the general welfare, the reality, given the vast financial resources of the Federal Government, is that the Spending Clause gives "power to the Congress to tear down the barriers, to invade the states' jurisdiction, and to become a parliament of the whole people, subject to no restrictions save such as are self-imposed." *United States* v. *Butler, supra,* at 78. This, of course, as *Butler* held, was not the Framers' plan and it is not the meaning of the Spending Clause.

Our later cases are consistent with the notion that, under the spending power, the Congress may only condition grants in ways that can fairly be said to be related to the expenditure of federal funds. For example, in *Oklahoma* v. *CSC,* 330 U. S. 127 (1947), the Court upheld application of the Hatch Act to a member of the Oklahoma State Highway Commission who was employed in connection with an activity financed in part by loans and grants from a federal agency. This condition is appropriately viewed as a condition relating to how federal moneys were to be expended. Other conditions that have been upheld by the Court may be viewed as independently justified under some regulatory power of the Congress. Thus, in *Fullilove* v. *Klutznick,* 448 U. S. 448 (1980), the Court upheld a condition on federal grants that 10% of the money be "set aside" for contracts with minority business enterprises. But the Court found that the condition could be justified as a valid regulation under the commerce power and § 5 of the Fourteenth Amendment. *Id.,* at 476, 478. See also *Lau* v. *Nichols,* 414 U. S. 563 (1974) (upholding nondiscrimination provisions applied to local schools receiving federal funds).

This case, however, falls into neither class. As discussed above, a condition that a State will raise its drinking age to 21 cannot fairly be said to be reasonably related to the expenditure of funds for highway construction. The only possible connection, highway safety, has nothing to do with how the funds Congress has appropriated are expended. Rather than a condition determining how federal highway money shall be expended, it is a regulation determining who shall be able to drink liquor. As such it is not justified by the spending power.

Of the other possible sources of congressional authority for regulating the sale of liquor only the commerce power comes to mind. But in my view, the regulation of the age of the purchasers of liquor, just as the regulation of the price at which liquor may be sold, falls squarely within the scope of those powers reserved to the States by the Twenty-first Amendment. *Capital Cities Cable, Inc.* v. *Crisp,* 467 U. S. 691, 716 (1984). As I emphasized in *324 Liquor Corp.* v. *Duffy,* 479 U. S. 335, 356 (1987) (dissenting opinion):

> "The history of the Amendment strongly supports Justice Black's view that the Twenty-first Amendment was intended to return absolute control of the liquor trade to the States, and that the Federal Government could not use its Commerce Clause powers to interfere in any manner with the States' exercise of the power conferred by the Amendment."

Accordingly, Congress simply lacks power under the Commerce Clause to displace state regulation of this kind. *Ibid.*

The immense size and power of the Government of the United States ought not obscure its fundamental character. It remains a Government of enumerated powers. *McCulloch* v. *Maryland,* 4 Wheat. 316, 405 (1819). Because 23 U. S. C. § 158 (1982 ed., Supp. III) cannot be justified as an exercise of any power delegated to the Congress, it is not authorized by the Constitution. The Court errs in holding it to be the law of the land, and I respectfully dissent.