Chief Judge WILKINSON and Judges RUSSELL, WIDENER, ERVIN, WILKINS, NIEMEYER, HAMILTON, LUTTIG, WILLIAMS, MICHAEL, and MOTZ voted to reverse. Judges MURNAGHAN and K.K. HALL voted to affirm.
OPINION
PER CURIAM:
Part B of the Individuals with Disabilities Education Act (“IDEA”), 20 U.S.C. §§ 1411-20 (Supp.1996), affords federal financial assistance to state and local education agencies for the education of disabled students. In order to qualify for funds under the IDEA, a state must submit a plan describing the policies and procedures governing the expenditure of the federal funds to the Office of Special Education Programs (“OSEP”) for approval, and must meet certain additional requirements. One of these additional requirements is that the state “assure[] all children with disabilities the right to a free appropriate public education.” 20 U.S.C. § 1412(1) (Supp.1996). The Secretary of Education is directed tó suspend all IDEA payments to a state if, after notice and opportunity for a hearing, the Secretary determines that the state has failed to substantially comply with any of IDEA’S additional requirements. See id. at § 1416(a).
In August of 1992, the Commonwealth of Virginia submitted to OSEP its IDEA plan governing fiscal years 1993-95. The plan was conditionally approved and the Commonwealth received IDEA funding for 1993. The United States Department of Education subsequently learned that the State had in effect a policy—-like that the State maintains for its non-disabled students—pursuant to which it could cease providing free education to disabled students who are expelled or suspended long-term for behavior unrelated to their disabilities. Invoking IDEA’S requirement that states assure all disabled children “the right to a free appropriate education,” the Department' threatened to withhold Virginia’s entire $60 million annual IDEA grant for fiscal years 1994 and 1995 unless Virginia amended its policies to provide private educational services to each of the State’s 126 disabled students who had been expelled for reasons wholly unrelated to their disabilities.
Virginia refused to so amend its policy, maintaining that IDEA does not prevent school officials from discontinuing educational services to disabled students so long as those students are suspended or expelled for reasons unrelated to their disabilities. Virginia petitioned this court for interlocutory review, and we ordered the Secretary of Education to conduct an evidentiary hearing. See Virginia Dept. of Education v. Riley, 23 F.3d 80 (4th Cir.1994). The United States persisted in its position after the hearing, and on July 3, 1995, the Secretary issued a final ruling, providing in effect that, unless Virginia amended its disciplinary policy so it was no longer possible to discontinue the education of disabled students, the federal government could cut off all funding to Virginia under the IDEA.
Virginia appealed, claiming inter alia that, in order to condition a state’s receipt of federal funds, Congress must clearly manifest through the language of the statute an unambiguous intent to do so, and that the IDEA included no such clear statement. On appeal, a divided panel of this court affirmed the Department of Education’s construction of the IDEA and administrative ruling. See Commonwealth of Virginia v. Riley, 86 F.3d 1337 (4th Cir.1996). Judge Luttig dissented. See id. at 1347-58. On October 11, 1996, the court granted Virginia’s petition for rehearing en banc.
After reviewing the record and briefs, and following oral argument, Chief *561 Judge Wilkinson and Judges Russell, Widener, Wilkins, Luttig, and Williams voted to reverse the ruling of the United States Department of Education and to adopt as their own the dissenting panel opinion of Judge Luttig, Commonwealth v. Riley, 86 F.Bd 1337, 1347-1358 (4th Cir.1996), which holds as follows:
1. In order for Congress to condition a state’s receipt of federal funds, Congress must do so clearly and unambiguously. See South Dakota v. Dole, 483 U.S. 203, 207, 107 S.Ct. 2793, 2796, 97 L.Ed.2d 171 (1987). Language which, at best, only implicitly conditions the receipt of federal funding on the fulfillment of certain conditions is insufficient to impose on the state the condition sought.
2. Title 20, U.S.C. § 1412(1) guarantees that all children with disabilities be provided “the right” to a free public education; this section does not purport to require that every disabled child be provided a free public education regardless of state disciplinary policies governing the provision of educational opportunities to disabled students expelled or suspended for criminal or other serious misconduct wholly unrelated to their disabilities. Since the plain language of the IDEA does not, even implicitly, condition the receipt of IDEA funding on the continued provision of educational services to disabled students who are expelled or suspended long-term due to serious misconduct wholly unrelated to their disabilities, the United States Department of Education was without authority to condition the Commonwealth of Virginia’s receipt of IDEA funding on the continued provision of free education to such students.
3. A substantial constitutional question under the Tenth Amendment would be presented were the Secretary of Education’s interpretation of the IDEA upheld, as the withholding of the Commonwealth’s entire IDEA funding allotment because of its refusal to provide private tutors to the 126 disabled students expelled or suspended for serious misconduct wholly unrelated to their disabilities resembles impermissible coercion, if not forbidden regulation in the guise of Spending Clause condition.
Judge Niemeyer wrote a separate opinion concurring only in Part I of Judge Luttig’s dissenting panel opinion and in the judgment. Judge Hamilton wrote a separate opinion concurring only in Part I of Judge Luttig’s dissenting panel opinion and in the judgment, which was joined by Judge Ervin. Judge Michael wrote a separate opinion concurring in the judgment. Judge Motz wrote a separate opinion concurring in the judgment. Judge Murnaghan wrote a dissent, which was joined by Judge Hall. Judge Hall wrote a dissenting opinion.
Copies of Judge Luttig’s dissenting panel opinion, and all other opinions filed in this case, are attached.

REVERSED.