Justice Kennedy,
concurring in the judgment.
The Court is correct, in my view, to hold that the challenged portions of 18 U. S. C. § 4248 are necessary and proper exercises of congressional authority.
Respondents argue that congressional authority under the Necessary and Proper Clause can be no more than one step removed from an enumerated power. This is incorrect. When the inquiry is whether a federal law has sufficient links to an enumerated power to be within the scope of federal authority, the analysis depends not on the number of links in the congressional-power chain but on the strength of the chain.
Concluding that a relation can be put into a verbal formulation that fits somewhere along a causal chain of federal powers is merely the beginning, not the end, of the constitutional inquiry. See United States v. Lopez, 514 U. S. 549, 566-567 (1995). The inferences must be controlled by some limitations lest, as Thomas Jefferson warned, congressional powers become completely unbounded by linking one power to another ad infinitum in a veritable game of “ ‘this is the house that Jack built.’” Letter from Thomas Jefferson to Edward Livingston (Apr. 30,1800), 31 The Papers of Thomas Jefferson 547 (B. Oberg ed. 2004); see also United States v. Patton, 451 F. 3d 615, 628 (CA10 2006).
This separate writing serves two purposes. The first is to withhold assent from certain statements and propositions of the Court’s opinion. The second is to caution that the *151 Constitution does require the invalidation of congressional attempts to extend federal powers in some instances.
I
The Court concludes that, when determining whether Congress has the authority to enact a specific law under the Necessary and Proper Clause, we look “to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.” Ante, at 134 (suggesting that Sabri v. United States, 541 U. S. 600, 605 (2004), adopts a “means-ends rationality” test).
The terms “rationally related” and “rational basis” must be employed with care, particularly if either is to bé used as a stand-alone test. The phrase “rational basis” most often is employed to describe the standard for determining whether legislation that does not proscribe fundamental liberties nonetheless violates the Due Process Clause. Referring to this due process inquiry, and in what must he one of the most deferential formulations of the standard for reviewing legislation in all the Court’s precedents, the Court has said: “But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.” Williamson v. Lee Optical of Okla., Inc., 348 U. S. 483, 487-488 (1955). This formulation was in a case presenting a due process challenge and a challenge to a State’s exercise of its own powers, powers not confined by the principles that control the limited nature of our National Government. The phrase, then, should not be extended uncritically to the issue before us.
The operative constitutional provision in this case is the Necessary and Proper Clause. This Court has not held that the Lee Optical test, asking if “it might be thought that the particular legislative measure was a rational way to correct” an evil, is the proper test in this context. Rather, under the *152 Necessary and Proper Clause, application of a “rational basis” test should be at least as exacting as it has been in the Commerce Clause cases, if not more so. Indeed, the cases the Court cites in the portion of its opinion referring to “rational basis” are predominantly Commerce Clause cases, and none are due process cases. See ante, at 184-135 (citing Gonzales v. Raich, 545 U. S. 1 (2005); Lopez, supra; Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U. S. 264, 276 (1981)).
There is an important difference between the two questions, but the Court does not make this distinction clear. Raich, Lopez, and Hodel were all Commerce Clause cases. Those precedents require a tangible link to commerce, not a mere conceivable rational relation, as in Lee Optical. “ ‘[Sjimply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so.’” Lopez, supra, at 557, n. 2 (quoting Hodel, supra, at 311 (Rehnquist, J., concurring in judgment)). The rational basis referred to in the Commerce Clause context is a demonstrated link in fact, based on empirical demonstration. While undoubtedly deferential, this may well be different from the rational-basis test as Lee Optical described it.
The Court relies on Sabri, supra, for its conclusion that a “means-ends rationality” is all that is required for a power to come within the Necessary and Proper Clause’s reach. See ante, at 134. Sabri only refers to “means-ends rationality” in a parenthetical describing the holding in McCulloch v. Maryland, 4 Wheat. 316 (1819); it certainly did not import the Lee Optical rational-basis test into this arena through such a parenthetical. See Sabri, supra, at 612 (Thomas, J., concurring in judgment) (“A statute can have a ‘rational’ connection to an enumerated power without being obviously or clearly tied to that enumerated power”). It should be remembered, moreover, that the spending power is not designated as such in the Constitution but rather is implied from *153 the power to lay and collect taxes and other specified exac-tions in order, among other purposes, “to pay the Debts and provide for the common Defence and general Welfare of the United States.” Art. I, §8, cl. 1; see South Dakota v. Dole, 483 U. S. 203, 206 (1987). The limits upon the spending power have not been much discussed, but if the relevant standard is parallel to the Commerce Clause cases, then the limits and the analytic approach in those precedents should be respected.
A separate concern stems from the Court’s explanation of the Tenth Amendment. Ante, at 143-144. I had thought it a basic principle that the powers reserved to the States consist of the whole, undefined residuum of power remaining after taking account of powers granted to the National Government. The Constitution delegates limited powers to the National Government and then reserves the remainder for the States (or the people), not the other way around, as the Court’s analysis suggests. And the powers reserved to the States are so broad that they remain undefined. Residual power, sometimes referred to (perhaps imperfectly) as the police power, belongs to the States and the States alone.
It is correct in one sense to say that if the National Government has the power to act under the Necessary and Proper Clause then that power is not one reserved to the States. But the precepts of federalism embodied in the Constitution inform which powers are properly exercised by the National Government in the first place. See Lopez, 514 U. S., at 580-581 (Kennedy, J., concurring); see also McCul-loch, supra, at 421 (powers “consistent] with the letter and spirit of the constitution, are constitutional”). It is of fundamental importance to consider whether essential attributes of state sovereignty are compromised by the assertion of federal power under the Necessary and Proper Clause; if so, that is a factor suggesting that the power is not one properly within the reach of federal power.
*154 The opinion of the Court should not be interpreted to hold that the only, or even the principal, constraints on the exercise of congressional power are the Constitution’s express prohibitions. The Court’s discussion of the Tenth Amendment invites the inference that restrictions flowing from the federal system are of no import when defining the limits of the National Government’s power, as it proceeds by first asking whether the power is within the National Government’s reach, and if so it discards federalism concerns entirely.
These remarks explain why the Court ignores important limitations stemming from federalism principles. Those principles are essential to an understanding of the function and province of the States in our constitutional structure.
II
As stated at the outset, in this case Congress has acted within its powers to ensure that an abrupt end to the federal detention of prisoners does not endanger third parties. Federal prisoners often lack a single home State to take charge of them due to their lengthy prison stays, so it is incumbent on the National Government to act. This obligation, parallel in some respects to duties defined in tort law, is not to put in motion a particular force (here an unstable and dangerous person) that endangers others. Having acted within its constitutional authority to detain the person, the National Government can acknowledge a duty to ensure that an abrupt end to the detention does not prejudice the States and their citizens.
I would note, as the Court’s opinion does, that § 4248 does not supersede the right and responsibility of the States to identify persons who ought to be subject to civil confinement. The federal program in question applies only to those in federal custody and thus involves little intrusion upon the ordinary processes and powers of the States.
This is not a case in which the National Government demands that a State use its own governmental system to im *155 plement federal commands. See Printz v. United States, 521 U. S. 898 (1997). It is not a case in which the National Government relieves the States of their own primary responsibility to enact laws and policies for the safety and well-being of their citizens. See United States v. Morrison, 529 U. S. 598 (2000). Nor is it a case in which the exercise of national power intrudes upon functions and duties traditionally committed to the State. See Lopez, supra, at 580-581 (Kennedy, J., concurring).
Rather, this is a discrete and narrow exercise of authority ' over a small class of persons already subject to the federal power. Importantly, § 4248(d) requires the Attorney General to release any civil detainee “to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment,” providing a strong assurance that the proffered reason for the legislation’s necessity is not a mere artifice.
With these observations, I concur in the judgment of the Court.