Alliance for Open Society Int'l v. U.S. Agency for Int'l Dev.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>ORDER</u>

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 2nd day of February, two thousand twelve

- - - - - - - - - - - - - - - - - - - - - -X

ALLIANCE FOR OPEN SOCIETY INTERNATIONAL, INC., PATHFINDER INTERNATIONAL, GLOBAL HEALTH COUNCIL, INTERACTION,

**<u>Plaintiffs-Appellees</u>,**

OPEN SOCIETY INSTITUTE,

**<u>Plaintiff</u>,**

**-v.-**                                          08-4917-cv

UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, RAJIV SHAH,[*] in his official capacity as Administrator of the U.S. Agency for International Development, and his successors, UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION, THOMAS R. FRIEDEN, in his official capacity as Director of the U.S. Centers for Disease Control and Prevention, and his successors, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, KATHLEEN SEBELIUS, in her official capacity as Secretary of the U.S. Department of Health and Human Services, and her successors,

**<u>Defendants-Appellants</u>.**
- - - - - - - - - - - - - - - - - - - - - -X

---

[*] Named officials have been substituted for their predecessors pursuant to Fed. R. App. P. 43(c)(2).

**FOR PLAINTIFFS-APPELLEES:** Rebekah Diller, Benjamin N. Cardozo School of Law, New York, NY (Laura K. Abel, Brennan Center for Justice, NYU School of Law, New York, NY; David W. Bowker, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Jason D. Hirsch, Michael D. Gottesman, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, <u>on the brief</u>)

**FOR DEFENDANTS-APPELLANTS:** Benjamin H. Torrance, Assistant United States Attorney for the Southern District of New York (David S. Jones, Assistant United States Attorney, of counsel, <u>on the brief</u>) <u>for</u> Preet Bharara, United States Attorney for the Southern District of New York.

Following disposition of this appeal on July 6, 2011, Defendants-Appellants United States Agency for International Development, <u>et al.</u>, filed a petition for rehearing <u>in banc</u>. A poll of the active members of the Court having been conducted, and there being no majority favoring <u>in banc</u> review, rehearing <u>in banc</u> is hereby **DENIED**.

Rosemary S. Pooler, <u>Circuit Judge</u>, concurs by opinion from the denial of rehearing <u>in banc</u>.

José A. Cabranes, <u>Circuit Judge</u>, joined by Reena Raggi and Debra Ann Livingston, <u>Circuit Judges</u>, dissents by opinion from the denial of rehearing <u>in banc</u>.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK



2

08-4917-cv
*Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2010

Argued: December 9, 2010             Decided: July 6, 2011
Opinion on Rehearing: February 2, 2012

Docket No. 08-4917-cv

ALLIANCE FOR OPEN SOCIETY INTERNATIONAL, INC., Pathfinder International, Global
Health Council, Interaction,

*Plaintiffs-Appellees,*

Open Society Institute,

*Plaintiff,*

v.

UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, Rajiv Shah, in his official
capacity as Administrator of the U.S. Agency for International Development, and his
successors, United States Centers for Disease Control and Prevention, Thomas R. Frieden,
in his official capacity as Director of the U.S. Centers for Disease Control and Prevention,
and his successors, United States Department of Health and Human Services, Kathleen
Sebelius, in her official capacity as Secretary of the U.S. Department of Health and Human
Services, and her successors,

*Defendants-Appellants.*

\* \* \*

JOSÉ A. CABRANES, *Circuit Judge*, with whom Judge RAGGI and Judge LIVINGSTON join, dissenting

from the denial of rehearing *en banc*:

I respectfully dissent from the decision of the Court to deny rehearing *en banc* in this case. The

question presented is indisputably one of exceptional importance. It is also one that has divided the

Courts of Appeals.

1

In appropriating billions of dollars to combat the global HIV/AIDS epidemic, Congress found that "[p]rostitution and other sexual victimization are degrading to women and children and it should be the policy of the United States to eradicate such practices. The sex industry, the trafficking of individuals into such industry, and sexual violence are additional causes of and factors in the spread of the HIV/AIDS epidemic." 22 U.S.C. § 7601(23). It thus required, among other things, that in order to receive funds under this law, organizations must have "a policy explicitly opposing prostitution and sex trafficking." *Id.* § 7631(f). This is an uncomplicated and commonsensical condition of federal funding—but a divided panel of our Court has affirmed an injunction forbidding its enforcement.

Despite Congress's broad powers under the Spending Clause,[1] the panel majority in this case held that requiring organizations that accept federal program funds to have a policy consistent with a clearly-stated purpose of that funding program "infringes" the freedom of speech guaranteed by the First Amendment. The decision of the panel majority, which diverges from that of our sister circuit in the District of Columbia, is based on a newly uncovered constitutional distinction between "affirmative" and "negative" speech restrictions. *See Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 239 (2d Cir. 2011). Presented with the opportunity to restore uniformity in the enforcement of a federal statute by rehearing the case *en banc*, a majority of this Court voted to avoid doing so. I dissent from that decision.[2]

---

[1] The Spending Clause of the Constitution empowers Congress to "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. Incident to the Spending Clause power, "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power 'to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 474 (1980)).

[2] In her opinion concurring in the denial of *en banc* review, Judge Pooler asserts that this opinion "adds little to Judge Straub's dissent from the panel's opinion." Pooler, J., Op. Concurring in Denial of Reh'g En Banc, at 1 ("Pooler Op."). Maybe so—but the purpose of this opinion is not to propose a new theory of dissent, but to suggest that the reasons already articulated form a compelling basis for *en banc* review. Indeed, if the controlling body of law is as "complicated," "contentious," "messy," and "unsettled," as Judge Pooler claims, *id.* at 1-2, that assessment favors careful *en banc* review of an opinion—by a divided panel—that affirms an injunction of federal legislation.

I.

The statute at issue is the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act (the "Leadership Act"), 22 U.S.C. § 7601 *et seq.*, which provides $48 billion in taxpayer funds to combat the global HIV/AIDS epidemic,[3] *id.* § 7671(a), and includes an explicit congressional finding that "[p]rostitution and other sexual victimization are degrading to women and children and it should be the policy of the United States to eradicate such practices," *id.* § 7601(23). In keeping with that finding, Congress imposed two relevant conditions on the use of Leadership Act funds: that (1) "no funds . . . may be used to promote or advocate the legalization or practice of prostitution or sex trafficking," *id.* § 7631(e); and (2) with specified exceptions, "[n]o funds . . . may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking," *id.* § 7631(f). The latter provision, known as the "policy requirement," forms the subject of this appeal.

The panel decision in this case characterized the policy requirement as "impermissibly compelling Plaintiffs to espouse the government's viewpoint on prostitution." *Alliance for Open Soc'y*, 651 F.3d at 230. Based substantially on the "affirmative" nature of the policy requirement, the panel declared that "[i]t is this bold combination in a funding condition of a speech-targeted restriction that is both affirmative and quintessentially viewpoint-based that warrants heightened scrutiny." *Id.* at 236. Having applied "heightened scrutiny," the panel of course concluded that the plaintiffs had demonstrated a likelihood of success on the merits of their First Amendment challenge and therefore affirmed the preliminary injunction. *Id.* at 239.

---

Judge Pooler would have us believe that *en banc* review "would occasion a monumental expenditure of the time and resources of our Court," with "little prospect of resolving any of the current doctrinal disarray." *Id.* at 2. In her view, the daunting task of "tackl[ing]" the question presented is apparently beyond the "willing[ness]" and "ab[ility]" of the *en banc* court of the Second Circuit. *Id.* at 4. Instead, Judge Pooler would prefer "the Supreme Court's attention." *Id.* So be it.

[3] The original statute authorized $3 billion for each of the fiscal years 2004 through 2008; the current version, which was reauthorized and amended in 2008, authorizes $48 billion for the five-year period beginning October 1, 2008.

3

Notwithstanding the language of compulsion that riddles the majority opinion, it bears noting that the policy requirement does not actually "mandate," "compel," or "require" the plaintiffs to say anything at all. *Id.* at 223, 228, 230, 234–39. Rather, the policy requirement is simply "a condition on the voluntary receipt of Leadership Act funds," *id.* at 254 (Straub, J., dissenting), and the plaintiffs remain at liberty "to avoid the force of the regulations" by "simply declin[ing] the subsidy," *Rust v. Sullivan*, 500 U.S. 173, 199 n.5 (1991). As Judge Straub observed in a lengthy and careful dissent, "[t]here is a basic difference between the denial of government funding and a direct compulsion to speak." *Alliance for Open Soc'y*, 651 F.3d at 258 (Straub, J., dissenting).

It is well established that the unconstitutional conditions doctrine provides the jurisprudential framework for analyzing government subsidy conditions. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 59 (2006). Although the majority engaged in a detailed discussion of the unconstitutional conditions cases, the panel decision does not rest on the unconstitutional conditions jurisprudence. Professing that the doctrine does not "neatly" capture this case, *Alliance for Open Soc'y*, 651 F.3d at 234 n.3, the majority instead relied on a purported distinction between affirmative and negative speech restrictions, *id.* at 234 ("[W]here, as here, the government seeks to affirmatively require government-preferred speech, its efforts raise serious First Amendment concerns."). But no unconstitutional conditions case has ever turned on such a distinction.[4] Indeed, in the context of protected speech, the Supreme Court has held that the "difference between compelled speech and compelled silence" is "without constitutional significance." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988).

The panel decision thus presents the exceptionally important question of whether, despite Congress's broad powers under the Spending Clause, a funding condition that imposes an affirmative

---

[4] The majority implicitly acknowledges the novelty of this constitutional question by noting that "none of those [unconstitutional conditions] cases involved an affirmative speech restriction." *Alliance for Open Soc'y*, 651 F.3d at 235 n.3 (emphasis omitted).

4

speech requirement "infringes" constitutionally protected speech. *See Forum for Academic & Institutional Rights*, 547 U.S. at 59 (internal citation and quotation marks omitted). Although the majority has vigorously denied "put[ting] . . . aside" the unconstitutional conditions doctrine in answering that question with respect to the policy requirement, *id.* at 234 n.3, it is clear that the disposition of this case turns not on the existing jurisprudential framework, but on an affirmative-negative paradigm of the panel's own invention.

In so holding, the panel decision "splits" from the District of Columbia Circuit, which rejected a nearly identical challenge to the Leadership Act by another grantee that refused to adopt a policy opposing prostitution. *DKT Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 477 F.3d 758 (D.C. Cir. 2007). That circuit, writing prior to the amendment of the Agency Guidelines, explained that the funding condition was permissible because "the government has not created a program to encourage private speech"— rather, "the government's own message is being delivered." *Id.* at 762 (internal citations and quotation marks omitted). Our sister circuit concluded that the Leadership Act "does not compel [the plaintiff] to advocate the government's position on prostitution and sex trafficking; it requires only that if [the plaintiff] wishes to receive funds it must communicate the message the government chooses to fund. This does not violate the First Amendment." *Id.* at 764.

By reaching the opposite conclusion with respect to the constitutionality of the funding condition, the divided Second Circuit panel has created a "circuit split," so that, as the government's petition for rehearing *en banc* observes, the statute is enforceable in some jurisdictions but not in others. *See* Pet. for Rehearing 1. This is another reason why the panel decision indisputably raises a "question[] of exceptional importance." Fed. R. App. P. 35(b)(1)(B) ("[A] petition [for rehearing *en banc*] may assert that a proceeding presents a question of exceptional importance if it involves an issue on which the

5

panel decision conflicts with the authoritative decisions of the other United States Courts of Appeals that have addressed the issue.").

<h1 style="text-align:center">II.</h1>

One possible argument for voting against rehearing this case is a theory that *en banc* review of a preliminary injunction is inappropriate, and that we should stay our consideration of these issues for a further appeal—one that will purportedly follow a final determination on the merits. The Supreme Court has, it is true, instructed that "[i]f the underlying constitutional question is close, . . . we should uphold the injunction and remand for trial on the merits," *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 664–65 (2004). But the majority opinion makes no reference to a "remand for trial on the merits," *id.* at 665, and contains no decretal language to that effect. The District Court docket sheet, which was closed for administrative purposes on July 29, 2009, offers little insight as to what further proceedings, if any, are contemplated below. In the months prior to the filing of this appeal, the District Court threatened to "dismiss this action without further notice for lack of prosecution." *Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, No. 05 Civ. 8209, Doc. No. 93 (S.D.N.Y.). The last substantive entry on the District Court docket sheet is a letter from the plaintiffs dated January 6, 2010, informing the District Court of their expectation that, "following resolution of the appeal, it will be necessary to determine, at that time, *whether* to prosecute the action further in the District Court." *Id.*, Doc. No. 98 (emphasis added). On these facts, I respectfully submit that it is by no means certain that this case will return to us a third time.[5]

In any event, it is unclear how further development of the record would affect, much less alter, the decision of the panel majority that the policy requirement "falls well beyond what the Supreme

Court and this Court have upheld as permissible conditions on the receipt of government funds."

*Alliance for Open Soc'y*, 651 F.3d at 223.

**CONCLUSION**

Because this case presents a question of exceptional importance regarding the interaction of the unconstitutional conditions doctrine with an affirmative speech restriction, and because that question implicates the uniform application of a federal statute, I respectfully dissent from the denial of rehearing *en banc*.

---

[5] Judge Pooler catechistically asserts that there will be a live and continuing controversy in the District Court following the resolution of this appeal. Indeed, we are told that any suggestion to the contrary "is simply untrue," since "[a] preliminary injunction is just that—preliminary," Pooler Op. at 4, and "[o]nce the mandate issues, it is incumbent upon the district court to revive the ligitation," *id.* at 5. Whether she is right on this score remains to be seen. Much will depend upon the readiness *vel non* of the district judge to continue to pursue legal questions on which, he might well think, he has already received the authoritative instructions of the Court of Appeals.

ROSEMARY S. POOLER, *Circuit Judge*, concurring in the denial of rehearing *en banc*:

I respectfully concur in the denial of the rehearing en banc. I write in response to the dissent from the denial of rehearing en banc, which adds little to Judge Straub's dissent from the panel's opinion. *Compare Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 255 (2d Cir. 2011) ("*Alliance*") (Straub, *J.*, dissenting) (declaring that "the majority puts [the unconstitutional conditions] doctrine aside and appears to conclude that when a funding condition imposes an affirmative rather than negative speech requirement, it always raises serious First Amendment concerns") (quotation marks and alteration omitted), *with* Cabranes, *J.*, Op. Dissenting from Denial of Reh'g En Banc at **[4:21-5:2]** (announcing that it is "clear" that "the disposition of this case turns not on the existing jurisprudential framework, but on an affirmative-negative paradigm of the panel's own invention").

The en banc dissent oversimplifies a complicated and contentious body of law. *See* Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv. L. Rev. 1413, 1415-17 (1989) (describing the unconstitutional conditions doctrine as "riven with inconsistencies," "a minefield to be traversed gingerly," and in a state of "doctrinal disarray"); Robert C. Post, *Subsidized Speech*, 106 Yale L.J. 151, 175 (1996) ("[T]here is at present no well-developed doctrine setting forth the exact test to be used to evaluate viewpoint discriminatory regulations [like those at issue in *Rust v. Sullivan*, 500 U.S. 173 (1991)]"). What can be gleaned from a careful parsing of the case law is that the level of scrutiny applied to Government subsidies under the unconstitutional conditions doctrine turns on the type and scope of speech required or restricted, the speaker, whether the condition is viewpoint-discriminatory, its relationship to the Government program at issue, and other fact-specific inquiries. *See, e.g., United States v. Am.*

1

*Library Ass'n, Inc.*, 539 U.S. 194 (2003); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001)

("*Velazquez II*"); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998); *Rosenberger v.*

*Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995); *Rust v. Sullivan*, 500 U.S. 173

(1991); *FCC v. League of Women Voters of Cal.*, 468 U.S. 364 (1984); *Regan v. Taxation With*

*Representation*, 461 U.S. 540 (1983); *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462

F.3d 219 (2d Cir. 2006) ("*BLS*"); *Velazquez v. Legal Servs. Corp.*, 164 F.3d 757 (2d Cir. 1999)

("*Velazquez I*").

According to the dissent, plaintiffs' First Amendment claims may swiftly be rejected

because they "remain at liberty 'to avoid the force of the regulations' by 'simply declin[ing] the

subsidy.'" En banc dissent at **[3:20-4:1]** (quoting *Rust*, 500 U.S. at 199 n.5). Respectfully, and

as detailed in the panel opinion, such an assertion is refuted by a careful reading of *Velazquez II*,

*Rust*, *League of Women Voters*, *Regan*, *BLS*, and *Velazquez I*. The unconstitutional conditions

doctrine is messy and unsettled – so much so that the Government itself has changed its position

on the question of whether the funding condition at issue is constitutional.

Nor is it surprising that our decision created a circuit split. The dissent argues that split is

reason to rehear this case en banc. *See* En banc dissent at **[5:13-20]**. To the contrary, such an

exercise would occasion a monumental expenditure of the time and resources of our Court, on an

incomplete record, with precious little prospect of resolving any of the current doctrinal disarray.

An *en banc* court would force us to wade into and inevitably clash over doctrines frequently in

tension, including those for categorizing speakers;[1] testing the fit between a viewpoint-

---

[1] *See* Post at 169 ("The doctrine of unconstitutional conditions . . . lacks any mechanism for determining the domain to which speech should be allocated and hence for adequately describing the nature of the 'rights' that are to be protected."); *compare Velazquez II*, 531 U.S. at

discriminatory regulation in the context of a "government program" against the scope of, and message advanced by, that program;[2] determining when regulations penalizing the use of private funds must permit alternative channels for constitutionally-protected expression;[3] and assessing whether program integrity guidelines purportedly designed to provide such channels are, on their

542-43 ("The advice from the attorney to the client and the advocacy by the attorney to the courts cannot be classified as governmental speech even under a generous understanding of the concept."), *with id.* at 554 (Scalia, *J.*, dissenting) ("If the private doctors' confidential advice to their patients at issue in *Rust* constituted 'government speech,' it is hard to imagine what subsidized speech would *not* be government speech. . . . Even respondents agree that the true speaker in *Rust* was not the government, but a doctor.") (internal quotation marks omitted) (emphasis in original).

[2] *Compare Rust*, 500 U.S. at 194, 195 n.4 (describing prohibition on abortion counseling as condition of funding for family planning services as "a prohibition on a project grantee or its employees from engaging in *activities outside of the project's scope*" that was "*narrowly tailored* to fit Congress' intent in Title X that federal funds not be used to 'promote or advocate' abortion as a 'method of family planning'") (emphasis added), *and Velazquez I*, 164 F.3d at 766 ("Without diminishing its potential importance to some grantees, the speech restriction in *Rust* was nonetheless very narrow."), *with Velazquez II*, 531 U.S. at 548 ("[I]n the context of [the Legal Services Corporation Act] there is no programmatic message of the kind recognized in *Rust* and which sufficed there to allow the Government to specify the advice deemed *necessary for its legitimate objectives*.") (emphasis added), *and id.* at 547 ("Congress cannot recast a condition on funding as a mere definition of its program in every case, lest the First Amendment be reduced to a simple semantic exercise.").

[3] *Compare League of Women Voters*, 468 U.S. at 400 (striking down restriction on editorializing, but noting that restriction "would plainly be valid" if "Congress were to adopt a revised version of [the statute] that permitted [public radio] stations to establish 'affiliate' organizations which could then use the station's facilities to editorialize with non federal funds"), *with American Library Ass'n*, 539 U.S. at 212 (holding that requiring libraries to install filtering software on *every* computer with Internet access if the library receives *any* discount or funds from specified federal programs "does not 'penalize' libraries that choose not to install such software" because libraries that "wish to offer unfiltered access . . . are free to do so without federal assistance"), *and Rust*, 500 U.S. at 199 n.5 (rejecting argument that prohibition on abortion counseling penalized speech funded with non-federal money by requiring that recipients of grants help finance federally-funded projects by using matching non-federal funds).

face, inadequate.[4]  Even if we were willing and able to tackle these questions, our resolution

simply could not substitute for the Supreme Court's attention.  In any event, implying that this

case is easy and involves a straightforward application of clear Supreme Court precedent does a

disservice to the long list of judges from this and other courts who have wrestled to reconcile and

correctly apply a complicated body of law.

The fact-specific nature of the inquiry makes this case particularly ill-suited to en banc

consideration at this juncture, because our review here is from the grant of a preliminary

injunction.  Especially where, as here, the constitutional questions are both difficult and novel,

they are better-resolved, in more concrete terms, after a resolution on the merits.  *See Ashcroft v.*

*Am. Civil Liberties Union*, 542 U.S. 656, 664-65 (2004) (instructing that "[i]f the underlying

constitutional question is close, . . . we should uphold the injunction and remand for trial on the

merits.").  The dissent suggests that because the panel opinion fails explicitly to "remand for a

trial on the merits," the district court will simply allow the preliminary injunction to stand

without further action.  En banc dissent at **[5:22 -6:14]**.  This is simply untrue.  A preliminary

injunction is just that –  preliminary.  *See, e.g.*, *University of Tex. v. Camenisch*, 451 U.S. 390,

395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions

of the parties until a trial on the merits can be held."). The significant delays in prosecuting this

case reflect nothing more than its complicated procedural history, including the defendants'

---

[4] *See, e.g.*, *Velazquez II*, 531 U.S. at 546-47 (striking down restriction on scope of legal
aid attorneys' advocacy as condition of funding because "with respect to the litigation services
Congress has funded, there is no alternative channel for expression of the advocacy Congress
seeks to restrict," even though the regulations at issue permitted funding recipients to establish
affiliate organizations to conduct litigation and other activities outside the scope of the LSC
program).

decision mid-appeal to revise the guidelines at issue. *See Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 254 F. App'x 843, 845-46 (2d Cir. Nov. 8, 2007).  Once the mandate issues, it is incumbent upon the district court to revive the litigation  *See Alliance*, 651 F.3d at 239 (noting that "[b]ecause the Policy Requirement compels grantees to espouse the government's position on a controversial issue, the district court did not abuse its discretion in preliminarily enjoining its enforcement *pending a trial on the merits*") (emphasis added).

Plainly, I think the panel opinion correctly concluded that heightened scrutiny applies, and that for the reasons set forth in the panel opinion, that the Policy Requirement will likely be found to violate the First Amendment.  For these reasons, I concur in the denial of rehearing en banc.